# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERIC STEVENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:18-cv-00456 |
| FORD MOTOR COMPANY, a Delaware corporation, | § § § § | |
| *Defendant.* | § § | |

## DEFENDANT FORD MOTOR COMPANY'S
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)
## AND INCORPORATED SUPPORTING MEMORANDUM OF LAW

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

    I.    PLAINTIFFS COULD HAVE FILED THIS ACTION IN THE EASTERN DISTRICT OF MICHIGAN ................................................................................ 3

    II.    THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF TRANSFER ........................................................................................................... 4

        A.    Michigan Has Greater Ease of Access to Sources of Proof ............................ 4

        B.    The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer ............................................................................. 5

        C.    The Cost of Attendance at Trial for Willing Witnesses Would Be Significantly Less in Michigan ...................................................................... 7

        D.    Other Practical Considerations, Particularly the Nearly Identical Putative Nationwide Class Action Filed in Michigan, Heavily Weigh in Favor of Transfer ...................................................................................... 9

        E.    The Court Should Not Give Undue Weight to Plaintiffs' Choice of Venue ............................................................................................................ 13

    III.    THE PUBLIC INTEREST FACTORS HEAVILY WEIGH IN FAVOR OF TRANSFER ......................................................................................................... 13

        A.    Transfer Would Ameliorate Administrative Difficulties Flowing from Court Congestion .......................................................................................... 14

        B.    Local Interests in Having Localized Interests Decided at Home Favor Transfer ......................................................................................................... 14

        C.    The Eastern District of Michigan Is Well-Equipped to Decide Matters Under the Laws Governing this Case ............................................................ 15

        D.    No Known Conflicts of Laws Problems Arise at this Time .......................... 15

CONCLUSION ..................................................................................................................... 15

STATEMENT PURSUANT TO LOCAL RULE 7.1(D) ..................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Voice Developments US, LLC v. Microsoft Corp.*,
  No. 6:09-CV-366, 2010 WL 11468302 (E.D. Tex. Apr. 8, 2010)............................................15

*Bartolucci v. 1-800 Contacts, Inc.*,
  245 F. Supp. 3d 38 (D.D.C. 2017)........................................................................................11

*Brown v. Exactech, Inc.*,
  No. 4:17cv698, 2017 WL 6756669 (N.D. Tex. Dec. 8, 2017) .................................................5

*Cont'l Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960)..................................................................................................................9

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*,
  2008 WL 5119599 (N.D. Tex. 2008).....................................................................................10

*Droesser v. Ford Motor Co.*,
  No. 5:19cv12365 (E.D. Mich.) ....................................................................................... *passim*

*In re Enron Corp. Secs, Derivative & "ERISA" Litig.*,
  Nos. H-01-3624, 2004 WL 1237497 (S.D. Tex. May 20, 2004)............................................12

*Farlow v. Ford Motor Co.*,
  No. 3:18cv6967 (N.D. Cal. filed Nov. 16, 2018)............................................................ *passim*

*In re Gerber Probiotics Prods. Mktg. and Sales Practices Litig.*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012)..............................................................................2, 12

*In re Horseshoe Entertainment*,
  337 F.3d 429 (5th Cir. 2003) .................................................................................................13

*Keifer v. Paschall Truck Lines, Inc.*,
  2015 WL 1888263 (S.D. Tex. Apr. 24, 2015) .......................................................................15

*Kervin v. S. Serv. & Specialty Co.*,
  2:15cv102, 2015 WL 1540157 (S.D. Tex. Apr. 7, 2015) .....................................................3, 4

*Lemery v. Ford Motor Co.*,
  244 F. Supp. 2d 720 (S.D. Tex. 2002) .................................................................................8, 9

*Lugo v. Geo Grp., Inc.*,
  2017 WL 1807678 (S.D. Tex. May 5, 2017) ......................................................................6, 14

*Martinez v. Robert Bosch GmbH*,
   No. 9:18cv81500, ECF No. 1 (S.D. Fla. filed Nov. 1, 2018) .................................................... 6

*McPherson v. Leam Drilling Sys., LLC*,
   No. 2:14-CV-00113, 2014 WL 4063983 (S.D. Tex. Aug. 15, 2014) ........................ 3, 4, 5, 6, 7

*Neutron Depot, LLC v. Bankrate, Inc.*,
   2016 WL 6246507 (S.D. Tex. Oct. 26, 2016) ................................................................ 7, 8, 13

*Nunez v. Ford Motor Co.*,
   No. 1:18cv23211 (S.D. Fla. filed Dec. 12, 2018) ........................................................... *passim*

*Quantum Catalytics, LLC v. Vantage Point Venture Partners*,
   2008 WL 5272483 (S.D. Tex. 2008) ........................................................................................ 9

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) .................................................................................................... 3

*Rosemond v. United Airline, Inc.*,
   No. H-13-2190, 2014 WL 1338690 (S.D. Tex. Apr. 2, 2014) .................................................. 7

*TechRadium Inc. v. FirstCall Network Inc.*,
   3:13cv78, 2013 WL 4511326 (S.D. Tex. Aug. 23, 2013) ....................................................... 11

*In re Volkswagen AG*,
   371 F.3d at 203 ............................................................................................................ 3, 4, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .................................................................................................. 13

*West v. Oil States Indus., Inc.*,
   No. 2:14-cv-126, 2014 WL 3696345 (S.D. Tex. July 23, 2014) .................................. 8, 13, 14

*Wingard v. Ford*,
   No. 5:14-CV-68, 2014 WL 12672183 (E.D. Tex. Dec. 18, 2014) ........................... 4, 9, 11, 15

**Federal Statutes**

28 U.S.C. § 124

28 U.S.C. § 1391 ................................................................................................................................ 4

28 U.S.C. § 1404 ....................................................................................................... 2, 3, 9, 11, 12, 13

28 U.S.C. § 1407 ............................................................................................................. 2, 9, 11, 12

**INTRODUCTION**

On August 9, 2019, the same three law firms representing the named Plaintiffs here filed a nearly identical complaint against Ford Motor Company on behalf of a putative nationwide class. *Droesser v. Ford Motor Co.*, No. 5:19cv12365 (E.D. Mich.). That putative nationwide class subsumes not only the putative Texas class here, but also the putative California class in *Farlow v. Ford Motor Co.*, No. 3:18cv6967 (N.D. Cal. filed Nov. 16, 2018), and the putative Florida class in *Nunez v. Ford Motor Co.*, No. 1:18cv23211 (S.D. Fla. filed Dec. 12, 2018). The federal courts could deal with these cases in quadruplicate; or they could transfer the three single-state cases to the Eastern District of Michigan so that a single court, which is already responsible for a putative nationwide class, can manage each of these overlapping cases.

In each case, plaintiffs claim the same alleged issue: defects in high-pressure fuel injection pumps used in various Ford diesel trucks. *See* Compl., *Farlow*, ECF No. 1, ¶ 1 ("Ford Motor Company has sold—and continues to sell—millions of diesel trucks equipped with high-pressure fuel injection pumps that are proverbial ticking time bombs, wholly unbeknownst to an unassuming American public who ponies-up big bucks for these vehicles' fictitious 'durability,' 'longevity,' and 'top notch fuel economy.'"); *accord* Am. Compl., *Nunez*, ECF No. 5, ¶ 1 (same); Am. Compl., *Stevens*, ECF No. 17, ¶ 1 (same); Compl., *Droesser*, ECF No. 1, ¶ 1 (same). In each case, plaintiffs bring claims for fraud by concealment or omission, unjust enrichment, and breach of the implied warranty of merchantability, as well as claims under state consumer protection acts and the Magnuson-Moss Warranty Act. *See generally* Compl., *Farlow*, ECF No. 1; Am. Compl., *Nunez*, ECF No. 5; Am. Compl., *Stevens*, ECF No. 17; Compl., *Droesser*, ECF No. 1. And in each case, the operative complaint is signed by representatives from Hagans Berman Sobol Shapiro LLP; Hilliard, Martinez, Gonzalez LLP; and Morgan & Morgan, P.A. The only material difference in Plaintiffs' allegations is that the *Droesser* Complaint is not limited to single-state classes like

1

*Stevens*, *Farlow*, and *Nunez*. Instead, *Droesser* purports to bring a nationwide class action claim on behalf of "**All persons** who purchased or leased a model year 2011-2019 Ford vehicle fitted at any time with a Bosch CP4 fuel pump." Compl., *Droesser*, ECF No. 1, ¶ 114 (emphasis added).

Plaintiffs and their counsel recognize the similarities in their allegations, which led them to file a motion under 28 U.S.C. § 1407 to centralize them, as well as other incongruent cases pending against different vehicle manufacturers, into a multidistrict litigation ("MDL") for pretrial purposes (Plaintiffs' "Motion to Centralize"). Br. Supp. Mot. ("Mot. Centralize"), *In re: CP4 Defective Fuel Pump Litig.*, Pending Case No. 56, ECF No. 1-1, attached as **Exhibit 1**. Throughout their Motion to Centralize, Plaintiffs insist that this matter, *Droesser*, *Farlow*, and *Nunez*, as well as other matters pending against non-Ford manufacturers, "challenge the *same course of conduct*." *Id*. at 10 (emphasis in original). Plaintiffs state that "the defect description and overall allegations are basically synonymous." *Id*. at 10 n.4. They concede the "basic facts alleged . . . are virtually the same." *Id*. at 10. And they acknowledge the actions "involve virtually the same . . . legal issues." *Id*. at 11. Yet the Judicial Panel on Multidistrict Litigation ("JPML") has "repeatedly" stressed that "transfer under [28 U.S.C. §] 1404 is preferable to Section 1407 centralization." *In re Gerber Probiotics Prods. Mktg. and Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012). Where, as here, the parties and courts can achieve consolidation through ordinary motions under § 1404(a), an MDL is unnecessary.

Although Ford disagrees that any of these cases can meet the stringent requirements to proceed with a nationwide class or even state-specific classes, it does agree with plaintiffs that "comprehensive supervision by a *single court*" is preferable in these matters. *See* Compl., *Droesser*, ECF No. 1, ¶ 123 (emphasis added); Mot. Centralize, *In re: CP4*, ECF No. 1-1, at 4 (transfer for "proceedings in one federal district court will achieve efficiencies in discovery and

2

motion practice, preserve judicial resources, and alleviate the risk of inconsistent pretrial rulings"). Thus, pursuant to Section 1404(a), Ford moves this Court to transfer this matter to the Eastern District of Michigan,[1] where a single court can resolve these nearly identical lawsuits all the way through trial.

### ARGUMENT

Congress designed 28 U.S.C. § 1404(a) to "protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy and money." *McPherson v. Leam Drilling Sys., LLC*, No. 2:14-CV-00113, 2014 WL 4063983, at *3 (S.D. Tex. Aug. 15, 2014). Transfer is appropriate when "the balance of convenience and justice weighs in favor of transfer." *Kervin v. S. Serv. & Specialty Co.*, 2:15cv102, 2015 WL 1540157, at *3 (S.D. Tex. Apr. 7, 2015) (citations omitted).

The Court examines "certain private and public interest factors" in its examination of the propriety of transfer. *McPherson*, 2014 WL 4063983, at *3. No single factor is dispositive, and the Court should not conduct a "raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score.'" *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Rather, "[w]hether transfer pursuant to § 1404(a) is proper is committed to the sound discretion of the trial court, which should determine the motion based on an 'individualized case-by-case consideration of convenience and fairness.'" *Id.*

### I. Plaintiffs Could Have Filed this Action in the Eastern District of Michigan.

"The threshold determination under § 1404(a) is whether the action could have been filed in the judicial district to which the transfer is sought." *Kervin*, 2015 WL 1540157, at *3 (citing *In re Volkswagen AG*, 371 F.3d at 203). This matter, like *Droesser* itself, could have been filed in

---

[1] Ford will file similar motions to transfer in *Farlow* and *Nunez*.

3

the Eastern District of Michigan, which includes Ford's principal place of business.[2]  28 U.S.C. § 1391(b)(1), (c)(2), (d); *Kervin*, 2015 WL 1540157, at *3; *see* Am. Compl., *Stevens*, ECF No. 5, ¶ 19 (acknowledging that Ford has "its principal place of business" in Dearborn, Michigan); *see also* Compl., *Droesser*, ECF No. 1, ¶ 21 (alleging facts supporting venue in the Eastern District of Michigan).

## II.     The Private Interest Factors Weigh in Favor of Transfer.

The Court considers four private interest factors in its transfer analysis: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *McPherson*, 2014 WL 4063983, at *3 (citing *In re Volkswagen AG*, 371 F.3d at 203).

### A.     Michigan Has Greater Ease of Access to Sources of Proof.

The first private interest factor the Court should consider is the ease of access to sources of proof.  "Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of documents and hard copies across the country, this factor must still be considered in the transfer analysis." *Wingard v. Ford*, No. 5:14-CV-68, 2014 WL 12672183, at *2 (E.D. Tex. Dec. 18, 2014).  This factor favors transfer.

Sources of proof include documents and physical evidence.  The relevant documents in this products liability action relate to the central issue: whether the fuel injection pumps in certain Ford trucks are defective.  Those documents will relate to the design, development, testing, manufacture, marketing, distribution, and sale of these vehicles.  *See* Am. Compl., *Stevens*, 2:18cv456, ECF No. 17, ¶ 20; *accord id.* ¶ 111.  They also will include the mountain of documents

---

[2] The same is true for *Farlow* and *Nunez*.

4

regarding the design of owner's manuals, warranty booklets, advertisements, and other promotional materials. *Id*. ¶ 20. These documents primarily exist at Ford's headquarters in Dearborn—in the Eastern District of Michigan.

The only known sources of proof that lie in Texas are documents relating to Plaintiffs' claimed damages and, at this point, the truck owned by a single named Plaintiff. As to the first, courts regularly recognize that, in a products liability case, design, manufacturing, and marketing documents inevitably will dwarf damages documentation. *See, e.g.*, *Brown v. Exactech, Inc.*, No. 4:17cv698, 2017 WL 6756669, at *2 (N.D. Tex. Dec. 8, 2017). *Cf. McPherson*, 2014 WL 4063983, at *4 (transferring Fair Labor Standards Act collective action and finding a "significant portion of the proof . . . [would] come from the records of the Defendant," which rested in the transferee district). As to the second source of proof, Plaintiffs' vehicles themselves do not tip the balance either. Only one of the two named plaintiffs, Mr. Stevens, still has his truck. Am. Compl., *Stevens*, ECF No. 17, ¶¶ 9, 12. This means that a single relevant vehicle is confirmed to sit in Corpus Christi. The overwhelming majority of the potential sources of proof sits in the Eastern District of Michigan.

> **B.** **The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer.**

The Court next looks to the availability of compulsory process to secure the attendance of witnesses. This factor favors transfer for two reasons. First, the subjects of Plaintiffs' Complaint are Ford trucks from model years 2011-2019. Am. Compl., *Stevens*, ECF No. 5, ¶ 1. Decisions related to the design, manufacture, and much of the marketing strategy for these vehicles took place well over a decade ago. It should come as no surprise that important witnesses for Ford, who were employees during that time, do not all presently work for Ford. It is likely that even those currently employed will not all continue to work for Ford during the pendency of this lawsuit.

5

This Court has recognized this inevitability before. *McPherson*, 2014 WL 4063983, at *4 ("It is foreseeable that some of Defendant's employees who may be witnesses will change jobs and therefore will no longer be under the control of the Defendant."); *see also Lugo v. Geo Grp., Inc.*, 2017 WL 1807678, at *2 (S.D. Tex. May 5, 2017) (finding persuasive movant's former employees who lived in the transferee district and could not be compelled to trial in the transferor district).

Like the Ford witnesses involved in design, manufacturing, and marketing, any potential Bosch witnesses likely are located near that company's headquarters in Farmington Hills, Michigan, which is less than 25 miles from Detroit and sits within the Eastern District of Michigan. See Compl., *Martinez v. Robert Bosch GmbH*, No. 9:18cv81500, ECF No. 1 (S.D. Fla. filed Nov. 1, 2018) (alleging that Robert Bosch, LLC "designed, manufactured, and supplied elements of the defective . . . fuel injection system" to the vehicle manufacturers, and that this entity's principal place of business was in Farmington Hills). But unlike the Ford witnesses, employees of Bosch are not affiliated with a party to this action. This means that they may only be compelled to testify through compulsory process. Their location in Michigan means that the Eastern District of Michigan could compel their trial testimony, but this Court could not, because the witnesses would not reside or work within 100 miles of Corpus Christi.

In contrast, none of the dealers who sold Plaintiffs their vehicles or diagnosed a later issue are within 100 miles of this Court.[3] Plaintiff Stevens purchased his Ford from a dealership in Grapevine, Texas, and allegedly encountered difficulties with his truck in Nacogdoches, where he took the truck to a local private mechanic for repairs and later discussed his warranty with a Ford dealership. Am. Compl., *Stevens*, ECF No. 5, ¶ 9. Grapevine is more than 400 miles away from

---

[3] The same issue arises for those unnamed putative class members who purchased their trucks outside of Texas. *See* Mot. Dismiss, *Stevens*, ECF No. 8, at 2. Those non-party dealers will not be subject to compulsory process by this Court.

this Court.[4]  It sits in Tarrant County, in the Northern District of Texas, Fort Worth Division.  28 U.S.C. § 124(a)(2).  Nacogdoches is in Nacogdoches County, 349 miles from this Court, and sits in the Eastern District of Texas, Lufkin Division.  *Id*. § 124(c)(6).  Named Plaintiff Darren Fulton encounters the same problems.  Am. Compl., *Stevens*, ECF No. 5, ¶¶ 10-11.  He lives in Rosharon, 183 miles from Corpus Christi, and he bought his Ford in Angleton, 173 miles away.  *Id*.  Both Rosharon and Angleton are in Brazoria County, which sits in the Galveston Division of the Southern District of Texas.  28 U.S.C. § 124(b)(1).  Fulton allegedly had problems with his truck, and received a diagnosis from a dealership, in Houston, 221 miles from Corpus Christi and within the Houston Division.  *Id*. § 124(b)(2).

Accordingly, no non-party witnesses reside within 100 miles of this Court.  But several inevitably will reside within 100 miles, and the subpoena power, of the Eastern District of Michigan.  This factor thus favors transfer.

> **C.     The Cost of Attendance at Trial for Willing Witnesses Would Be Significantly Less in Michigan.**

Like the first factor—access to sources of proof—the factor regarding the cost of attendance at trial leans in favor of transfer.  "[T]he convenience and cost of attendance for witnesses is a very important factor in a transfer analysis."  *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 WL 6246507, at *3 (S.D. Tex. Oct. 26, 2016).

There is a significant difference in the ease of traveling to Detroit versus Corpus Christi.  *McPherson*, 2014 WL 4063983, at *5 (finding greater ease of travel to and from transferee division, Houston, as opposed to Corpus Christi versus weighed in favor of transfer).  The Corpus Christi airport typically only services airports in Houston and Dallas.  *See* Flights, Corpus Christi

---

[4] The Court may take judicial notice of distances in its consideration of this Motion.  *See, e.g.*, *Rosemond v. United Airline, Inc.*, No. H-13-2190, 2014 WL 1338690, *3 (S.D. Tex. Apr. 2, 2014).

7

Int'l Airport, https://corpuschristiairport.com/flights.cfm (last visited Aug. 21, 2019). In stark contrast, the Detroit airport ("DTW") is a major international airport, serving more than 140 destinations and 35.2 million passengers. *See* About Us, Detroit Metro Airport, https://www.metroairport.com/about-us (last visited Aug. 21, 2019). Every day, DTW has more than two dozen flights to and from Houston alone. *See* Flight Status, Detroit Metro Airport, https://www.metroairport.com/flights/flight-status?search=houston (last visited Aug. 21, 2019).

This comparison is particularly important given the location of the parties and potential witnesses. In a product action, "the majority of the witnesses at trial will testify concerning the design, manufacturing, and marketing" of the allegedly defective product. *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 730 (S.D. Tex. 2002). These relevant Ford and Bosch witnesses in this matter—and in the *Droesser* matter, and the *Farlow* matter, and the *Nunez* matter—live and work in Dearborn, just outside of Detroit and within the Eastern District of Michigan. Plaintiffs acknowledge as much in their Rule 30(b)(6) Notices, all of which notice depositions of Ford representatives in Dearborn, Michigan, **Exhibit 2**. "The expense that would have to be incurred by [Ford's Michigan] employees in travelling to Corpus Christi for trial favors transfer." *West v. Oil States Indus., Inc.*, No. 2:14-cv-126, 2014 WL 3696345, at *2 (S.D. Tex. July 23, 2014). Moreover, the convenience to the Bosch witnesses, who are not affiliated with a party, "is accorded greater weight." *Neutron Depot*, 2016 WL 6246507, at *3 (citation omitted).

In contrast, and as articulated above, only Plaintiff Stevens lives in Corpus Christi. Plaintiff Fulton lives in Brazoria County, which borders Houston, a city that has two airports with more than two dozen flights to and from Detroit each day. The inconvenience and cost for a single named plaintiff traveling to Detroit is far outweighed by the significant gains in convenience and cost-savings for the "majority of witnesses" if this case were transferred to the Eastern District of

8

Michigan. *Lemery*, 244 F. Supp. 2d at 730. Moreover, their Motion to Centralize suggests that Plaintiffs Stevens and Fulton are already willing to travel to Michigan as part of this litigation—for instance, to offer testimony in an evidentiary hearing for class certification. Accordingly, the cost and ease of attendance at trial for willing witnesses weighs in favor of transfer.

      **D.**      **Other Practical Considerations, Particularly the Nearly Identical Putative Nationwide Class Action Filed in Michigan, Heavily Weigh in Favor of Transfer.**

The practical considerations here heavily weigh in favor of transfer to the Eastern District of Michigan, where Plaintiffs' counsel recently filed a nearly-identical complaint on behalf of a putative nationwide class that includes all members of the putative *Stevens* class. *See Droesser* Compl. ¶ 114. Moreover, Plaintiffs' Motion to Centralize under 28 U.S.C. § 1407 does not prevent this Court from ordering transfer under Section 1404(a). Instead, the JPML prefers that courts consolidate under Section 1404(a) where appropriate.

The key consideration for this factor is the nearly identical case filed by Plaintiffs' counsel in the Eastern District of Michigan. Courts have recognized the judicial economy considerations raised by this situation for decades. In fact, the elimination of multiple courts hearing duplicative issues is one of the very purposes of Section 1404. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

Given the importance of judicial economy, and the elimination of similar suits proceeding in more than one jurisdiction, courts hold that the existence of duplicative suits "weigh[s] **heavily** in favor or against transfer." *Wingard*, 2014 WL 12672183, at *4 (emphasis added); *see also Quantum Catalytics, LLC v. Vantage Point Venture Partners*, 2008 WL 5272483, *3 (S.D. Tex. 2008) ("[W]hen the central issues under dispute are essentially the same and claims therefore are

closely intertwined, the interests of judicial economy and a concern regarding the possibility of inconsistent rulings will push in favor of transfer."). In fact, "[w]here related litigation is pending in the transferee court, the 'interest of justice' may dictate transfer notwithstanding any inconvenience to the parties and witnesses." *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, *6 (N.D. Tex. 2008) (citing cases). Indeed, Plaintiffs' counsel themselves recognize the benefits of litigating several related matters in the same venue. Compl., *Droesser*, ECF No. 1, ¶ 123 (touting the class action device's benefits including a "single adjudication, economy of scale, and comprehensive supervision by a single court"); *id.* ¶ 119 ("The disposition of the claims of the Class Members in a single class action will provide substantial benefits to all Parties and the Court." (emphasis added)). Yet litigating *Stevens* separately from *Droesser* would undermine those very benefits.

The *Droesser* allegations and the *Stevens* allegations are virtually identical in material respects. Compare, for instance, the Introduction sections of this case's Amended Complaint and the *Droesser* Complaint: identical down to the word. Am. Compl., *Stevens*, ECF No. 17, ¶¶ 1-7; Compl., *Droesser*, ECF No. 1, ¶¶ 1-7. The class vehicle definitions are word-for-word the same. Am. Compl., *Stevens*, ECF No. 17, ¶ 17; Compl., *Droesser*, ECF No. 1, ¶ 24. The "Factual Allegations" sections are the same. Am. Compl., *Stevens*, ECF No. 17, ¶¶ 18-93; Compl., *Droesser*, ECF No. 1, ¶¶ 25-99.[5] Finally, and perhaps most importantly, the Class Definitions:

- *Droesser*: "All persons who purchased or leased a model year 2011-2019 Ford vehicle fitted at any time with a Bosch CP4 fuel pump." Compl., *Droesser*, ECF No. 1, ¶ 114.

---

[5] The Venue and Jurisdiction section of the *Droesser* Complaint supports its claim for venue in Michigan by alleging that Ford provides advertising and customer facing information to theses dealers for the purpose of exposing consumers in *Texas* to that information." Compl., *Droesser*, ECF No. 1, ¶ 23.

- *Stevens*: "All persons or entities who have purchased or leased the Class Vehicles (2011–present model year Ford diesel vehicles equipped with a Power Stroke 6.7L engine and/or CP4 fuel injection pump system) in the state of Texas."  Am. Compl., *Stevens*, ECF No. 17, ¶ 105.

The only substantive difference between the two Class Definitions is that the *Stevens* definition is limited by location in the state of Texas.  Not only are the Class Definitions essentially the same; the nationwide *Droesser* Class Definition actually *subsumes* the *Stevens* Class Definition.  Plaintiffs properly acknowledged to this Court that the *Droesser* litigation is "related" to this one and that the two cases "pertain to the same [alleged] defect."  Pls.' Not. Related Litig., *Stevens*, ECF No. 48.[6]  Because Plaintiffs acknowledge the relatedness of these cases, and because *Stevens* is now truly duplicative, judicial economy weighs "heavily" in favor of transfer.  *Wingard*, 2014 WL 12672183, at *4.

Through Plaintiffs' Motion to Centralize filed with the JPML, they seek to centralize their claims against three different vehicle manufacturers that made drastically different design, manufacturing, and marketing decisions.  This attempt to create a hodge-podge MDL only bolsters Ford's arguments in this Motion to Transfer for two reasons.[7]  First, as Ford has discussed throughout this Motion, Plaintiffs' Motion to Centralize essentially concedes that litigation of this matter separately from the *Droesser*, *Farlow*, and *Nunez* would congest the federal court system,

---

[6] This Notice of Related Litigation was filed under Local Rule 5.2, which "require(s) that litigants inform a court of recent or current related litigation because the interests of efficiency and consistency often favor the same judge hearing similar disputes."  *TechRadium Inc. v. FirstCall Network Inc.*, 3:13cv78, 2013 WL 4511326, at *3 (S.D. Tex. Aug. 23, 2013).  In *TechRadium*, the court found that the Rule 5.2 Notice supported the private interest factors in a Section 1404 transfer analysis and granted transfer to the court overseeing the related case.  *Id*. at *3-4.

[7] Moreover, "[a] court is not deprived of its discretion to transfer cases during the pendency of a section 1407 motion for pretrial consolidation."  *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 44 (D.D.C. 2017) (citing J.P.M.L. R. 2.1(d)) (granting motion to transfer under Section 1404(a) notwithstanding a pending motion to consolidate under Section 1407).

11

duplicate the parties' efforts, inconvenience parties and witnesses, and risk inconsistent rulings on identical issues of law and fact.

Second, the JPML has "repeatedly" held that "transfer under Section 1404 is preferable to Section 1407 centralization." *In re Gerber Probiotics Prods. Mktg. and Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012). Indeed, "[t]he Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of other options,'" including transfer under Section 1404. *Id*. at 1379. The *In re Gerber* panel denied an unopposed motion to centralize ten matters with admittedly "common factual and legal issues" because a "reasonable prospect" existed that "the multidistrict character of [the] litigation could be resolved through resolution of . . . pending Section 1404 motions." *Id*. at 1379. The reasoning is simple. Creation of an MDL under Section 1407 is "limited to pretrial proceedings only," whereas "Section 1404(a) transfer is for all purposes, including trial." *Id*. at 1380. Consequently, Section 1404(a) transfer "can result in a more streamlined action" that produces "significant advantages," such as avoiding motions practice upon remand. *Id*.

District courts beyond the J.P.M.L., including those in the Southern District of Texas, find similar advantages when comparing Section 1404(a) to Section 1407.

> [A Section 1407 transfer] is only temporary, results in rulings by the transferee court which may be subject to appellate review in different circuits at different times in the litigation, and controls multiple cases which, if not settled or resolved during pretrial proceedings by the transferee court, are ultimately remanded for trial back to the various transferor fora, whose laws might be different from those of the transferee court and from each other.

*In re Enron Corp. Secs, Derivative & "ERISA" Litig.*, Nos. H-01-3624, H-03-2345, 2004 WL 1237497, at *8 (S.D. Tex. May 20, 2004). Transfer under § 1404(a) is preferable here for the same reasons.

### E. The Court Should Not Give Undue Weight to Plaintiffs' Choice of Venue.

Plaintiff's choice of venue does not overcome other factors. Although it "is clearly a fact to be considered," *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003), the Fifth Circuit has cautioned district courts not to give "undue weight to the plaintiffs' choice of venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308-09 (5th Cir. 2008) (issuing mandamus).

The Fifth Circuit specifically warned against overweighting this consideration when large corporations like Ford are defendants. This is because "the general venue statute 'has the effect of nearly eliminating venue restrictions in suits against corporations.'" *Id.* at 313. Motions to transfer venue under Section 1404(a) require courts to "prevent plaintiffs from abusing their privilege under [the general venue statute] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id*. In other words, "while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *Id*. Plaintiffs' choice of venue "in and of itself it is neither conclusive nor determinative," *In re Horseshoe*, 337 F.3d at 434, and pales in comparison to the weighty factors favoring transfer.

### III. The Public Interest Factors Heavily Weigh in Favor of Transfer.

The Court next considers four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *West*, 2014 WL 3696345, at *1 (citing *In re Volkswagen*, 371 F.3d at 203). These factors "greatly overlap" with the "factors courts consider when looking at the 'interest of justice' in a transfer case." *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 WL 6246507, at *4 (S.D. Tex. Oct. 26, 2016).

### A. Transfer Would Ameliorate Administrative Difficulties Flowing from Court Congestion.

The first public interest factor, the administrative difficulties flowing from court congestion, supports transfer. The Eastern District of Michigan has significantly fewer cases overall and per judge than the Southern District of Texas. Judicial Caseload Profile, available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2019, **Exhibit 3**; *see also West*, 2014 WL 3696345, at *3 (finding this factor weighed in favor of transfer when the transferee district had a "general workload slightly lighter than the Southern District of Texas," which also had a longtime judicial vacancy). Perhaps even more importantly, the filings in this district have increased at a rate of more than 18% per year for the last few years, while the Eastern District of Michigan's filings are decreasing. *Id*. Transfer of this case would reduce the net congestion of the federal courts.

### B. Local Interests in Having Localized Interests Decided at Home Favor Transfer.

The local interests factor leans in favor of transfer for two reasons. First, the challenged actions—Ford's decisions surrounding the design, manufacture, and marketing of the subject trucks—primarily occurred in the Eastern District of Michigan. The location of the alleged wrong is of "primary importance" in a transfer motion. *Lugo*, 2017 WL 1807678, at *4.

Second, as between Corpus Christi's and Detroit's localized interests, the Michigan interests are stronger. Plaintiff Stevens, as a resident of Corpus Christi, has some interest in having this local interest decided in his locality. But he is the *only* party with any interest in having the litigation in Corpus Christi. The only other named plaintiff, Darren Fulton, does not reside in Corpus Christi. He lives 183 miles away in Rosharon, Texas, within the Galveston Division. Moreover, these Plaintiffs' interest is weakened by the nature of their claims. "[L]ocal interests that 'could apply virtually to any judicial district or division in the United States' are disregarded

14

in favor of particularized local interests. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue." *Wingard*, 2014 WL 12672183, at *4.

In contrast, Detroit has a clear local interest in this matter. "When [a] party has its principal place of business in a given district, that district has a local interest in the adjudication of the case." *All Voice Developments US, LLC v. Microsoft Corp.*, No. 6:09-CV-366, 2010 WL 11468302, at *4 (E.D. Tex. Apr. 8, 2010). Ford's principal place of business is in Dearborn, which borders Detroit. Accordingly, the local interests factor favors transfer.

### C. The Eastern District of Michigan Is Well-Equipped to Decide Matters Under the Laws Governing this Case.

The Eastern District of Michigan, which already will supervise litigation involving a nationwide class and allegations from at least 47 states and the District of Columbia, is well-equipped to adjudicate the claims raised in this matter. *See Keifer v. Paschall Truck Lines, Inc.*, 2015 WL 1888263, at *3 (S.D. Tex. Apr. 24, 2015) ("A court in the Eastern District of Kentucky would be just as competent to hear this type of personal injury claim as a court in the Southern District of Texas. This factor is neutral."). Indeed, counsel can make no argument that the Eastern District of Michigan cannot hear state-specific consumer law issues, as it has placed before it more than 150 of those very claims. This factor weighs in favor of transfer.

### D. No Known Conflicts of Laws Problems Arise at this Time.

At this time, Ford has not identified any conflicts of laws issues in this matter. This factor is neutral.

### CONCLUSION

For these reasons, the Court should transfer this matter to the United States District Court for the Eastern District of Michigan.

15

## STATEMENT PURSUANT TO LOCAL RULE 7.1(D)

The parties have conferred but cannot agree about the disposition of this motion.

                    Respectfully submitted,

                    */s/ Charles B. Hampton*
                    Charles B. Hampton
                    *Attorney in Charge*
                    Texas Bar No. 00793890
                    MCGUIREWOODS LLP
                    600 Travis St., Suite 7500
                    Houston, Texas 77002
                    (713) 353-6683 / (832) 214-9936 (Fax)
                    champton@mcguirewoods.com

                    Perry W. Miles, IV
                    pmiles@mcguirewoods.com
                    MCGUIREWOODS LLP
                    800 East Canal Street
                    Richmond, VA 23219
                    (804) 775-1039 / (804) 698-2122 (Fax)

                    ATTORNEYS FOR
                    FORD MOTOR COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2019, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via electronic mail.

                    */s/ Charles B. Hampton*
                    Charles B. Hampton