UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ERIC STEVENS, *et al*, | § |
| | § |
| Plaintiffs, | § |
| VS. | § CIVIL ACTION NO. 2:18-CV-456 |
| | § |
| FORD MOTOR COMPANY, | § |
| | § |
| Defendant. | § |

## ORDER ON MOTION TO TRANSFER VENUE

Plaintiffs brought this class action against Ford Motor Company (Ford), stating state and federal causes of action related to Ford's use of a Bosch-supplied high pressure CP4 fuel injection pump in its diesel trucks. Before the Court is "Defendant Ford Motor Company's Motion to Transfer Venue Under 28 U.S.C. § 1404(a)" (D.E. 52). Ford filed a supplement (D.E. 59); Plaintiffs filed a response (D.E. 67); and Ford replied (D.E. 69). Ford asks the Court to transfer this case as a matter of convenience to the Eastern District of Michigan. For the reasons set out below, the motion (D.E. 52) is DENIED.

### STANDARD OF REVIEW

The venue statute, 28 U.S.C. § 1404(a), "empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting § 1404(a)). The analysis begins by determining whether the action could have been brought in the transferee court in the first instance. 28 U.S.C.

§ 1404(a). There is no dispute that this case could have been filed in the Eastern District of Michigan, where Ford has its principal place of business.

The movant bears the burden of showing that the alternative forum is more appropriate for the action. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*] (en banc). To overcome the plaintiff's choice of venue, the movant must show good cause for the transfer, which exists when the transferee venue is clearly more convenient than the plaintiff's chosen venue. *Id.*

### A. Ford is Not Entitled to a Lesser Burden of Proof

Ford argues that this statement of its burden should be modified with a lower threshold because, as a large corporate defendant that is subject to multiple venues, it is vulnerable to abusive or harassing venue choices. For this proposition, Ford cites *Volkswagen II*. While *Volkswagen II* recognized that vulnerability created by the venue statute, it also noted that Congress had tempered the effects of that vulnerability with the passage of § 1404(a), reducing the burden that previously applied to corporations when they had to seek dismissals, rather than transfers, for forum non conveniens. 545 F.3d at 313. By stating the burden as "good cause" (showing the transferee venue "clearly more convenient"), the appropriate balance of interests had been struck. *Id.*

Ford also cites *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003), which states that a plaintiff's choice of venue, by itself, is neither conclusive nor determinative. There, the choice of venue was contrary to most of the issues ordinarily considered in a § 1404(a) analysis. In that employment discrimination case, the

plaintiff's residence, workplace, and employment records were all in the requested transferee district, yet the trial court gave them no weight. Instead, the trial court considered extraneous issues, such as location of counsel and vague suggestions of delay or prejudice as weighing against transfer.

As the Fifth Circuit observed, the trial court had given decisive weight to the plaintiff's choice of venue, contrary to a proper weighing of recognized factors. The court declared that "it is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *Id.* Consequently, the Fifth Circuit issued mandamus relief to transfer the case to the district where the plaintiff resided, where she worked, and where the employment records were kept. *Id.* at 435.

While these cases offer cautionary tales, there is no suggestion here that Plaintiffs' choice of a Texas venue was abusive or contrary to standard venue considerations. Nor does this Court consider Plaintiffs' venue choice as determinative in isolation. Rather, the Court engages in a full analysis of the arguments pertinent to the familiar factors considered when evaluating a § 1404(a) request. Ford must show that the factors clearly weigh in favor of transfer to the Eastern District of Michigan. Otherwise, the Court is simply shifting the inconvenience from one party to the other, which is not the purpose of the venue transfer statute. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993). The standard burden of proof applies here.

## B. Plaintiffs' Choice of Venue is Not Entitled to Special Weight

Plaintiffs argue that their choice of forum is entitled to great weight because it is their home state. *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992). Yet Ford responds that the home forum is less weighty in a putative class action due to the competing interests of other potential plaintiffs. *Kervin v. Supreme Serv. & Specialty Co., Inc.*, 2:15-CV-102, 2015 WL 1540157, at *1 (S.D. Tex. Apr. 7, 2015). The Court notes that Plaintiffs' choice of forum is not a separate factor when balancing venue-related interests. *Vassallo v. Goodman Networks, Inc.*, 5:14-CV-743-DAE, 2015 WL 502313, at *2 (W.D. Tex. Feb. 5, 2015). All things considered, its significance here is adequately accounted for in the ordinary burden of proof. The Court requires that the factors to be weighed, discussed below, must show good cause for the transfer—that the transferee forum is clearly more convenient. No more and no less weight is accorded to Plaintiffs' choice of forum in this case.

## C. The Relevant Factors for Consideration

Courts consider various private and public interest factors in determining whether a transfer is appropriate. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). Each will be addressed below.

## VENUE HISTORY

Plaintiffs' legal team has filed four similar cases against Ford, complaining of the CP4 fuel pump:

(1) A putative California class action, *Farlow v. Ford Motor Co.*, No. 3:18-cv-6967 (N.D. Cal., filed November 16, 2018);

(2) A putative Florida class action, *Nunez v. Ford Motor Co.*, No. 1:18-cv-25211 (S.D. Fla., filed December 12, 2018);

(3) This putative Texas class action (filed December 20, 2018); and

(4) A putative nationwide class action, *Droesser v. Ford Motor Co.*, No. 5:19-cv-12365 (E.D. Mich., filed August 9, 2019).

On August 21, 2019, Plaintiffs in all four cases, together with plaintiffs in five other cases[1] involving the CP4 fuel pump, sought transfer under 28 U.S.C. § 1407 to the Northern District of California or, alternatively, the Eastern District of Michigan for coordinated or consolidated pretrial proceedings. JPML No. 2919, D.E. 1. The same legal team also represents the plaintiffs in those five other cases.

The Judicial Panel on Multidistrict Litigation (JPML) denied the transfers, reciting three reasons. First was the number of cases. Because the cases are few and plaintiffs share the same counsel, the risk of redundant discovery and inconsistent class

---

[1] *Click v. General Motors LLC*, No. 2:18-cv-455 (S.D. Tex.); *Berry v. FCA US LLC*, No. 2:19-cv-023 (S.D. Tex); *In re: General Motors LLC CP4 Fuel Pump Litigation*, No. 4:18-cv-7054 (N.D. Cal); *Ginebra v. General Motors LLC*, No. 1:18-cv-25209 (S.D. Fla); *Chapman v. General Motors LLC*, 2:19-cv-112333 (E.D. Mich).

certification rulings was low. Second, the cases present individualized issues. Those included the manner in which the alleged defect manifested; the knowledge and decision-making of the three different manufacturers sued in the nine cases; and the marketing to, and decisions of, the Plaintiffs when purchasing or leasing the vehicles. Third, the proposed MDL included cases against three automakers, highlighting the difficulties of exposing confidential information between competitors and protecting trade secrets. Injecting protective measures might prolong rather than streamline pretrial proceedings. The JPML also denied the request to create MDLs for each defendant, indicating that the first two reasons counseled against any § 1407 transfer for MDL treatment.

In the JPML, Ford had opposed the § 1407 transfer for pretrial purposes, arguing that a § 1404 transfer to the Eastern District of Michigan for all purposes was preferable. JPML 2919, D.E. 19. In fact, Ford suggests that the JPML decision not to consolidate the cases for pretrial purposes does not signal that the referral to a single judge is contra-indicated. Rather, it is consistent with a general JPML preference for § 1404 transfers. D.E. 52, p. 6, 13, 16 (citing *In re Gerber Probiotics Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

But *Gerber's* analysis does not fit Ford's position. In *Gerber*, the JPML suggested that a § 1404(a) transfer is superior to a § 1407 MDL action when the inevitable remand to the original court will require additional motion practice and transferor courts spending time refamiliarizing themselves with the action. 899 F. Supp. 2d at 1380. Those were not the reasons the JPML asserted for denying the MDL in this case. This concern does not advance the § 1404(a) transfer analysis when the JPML denies the MDL request and

6 / 17

the cases stay with their original courts. Under those circumstances, while each court may have to address similar motions, they are not duplicating efforts of the JPML.

At the same time the JPML touted § 1404(a) transfers as a better alternative to MDLs, the *Gerber* opinion suggests that § 1404(a) is not the only preferable solution. Another is "cooperation and coordination among the parties and the various transferor courts." *Id.* These parties have indicated that they have agreed to such cooperative efforts. Therefore, nothing in the *Gerber* opinion makes a § 1404(a) transfer the obvious choice here.

Ford now plays back Plaintiffs' § 1407 pretrial transfer arguments to support its § 1404(a) full-transfer request. In response, Plaintiffs emphasize the difference between (a) their request for a voluntary § 1407 MDL transfer for pretrial purposes in the spirit of cooperation, and (b) the grievous involuntary loss of their choice of venue for trial purposes under a § 1404 transfer. And, as mentioned, they note that the parties are currently cooperating on consolidating the discovery proceedings without the benefit of the MDL, such that the efficiency they sought through § 1407 has been achieved, undercutting the need for any transfer.

These Plaintiffs have demonstrated a clear preference for their Texas trial venue for this case. However, since the JPML decision, Plaintiffs in the *Farlow* (California) and *Nunez* (Florida) actions have consented to § 1404 transfers of those cases to the Eastern District of Michigan, alongside *Droesser* (nationwide class). Plaintiffs distinguish this case from the others by representing that only this Court has made discovery-related rulings, successfully advancing this case toward trial without any

7 / 17

logistical difficulties. In response, Ford notes that the cooperative discovery agreement means that all of the cases are equally advanced in discovery. Moreover, Ford observes that Plaintiffs' failure to comply with the class certification deadlines has likely forfeited the current trial setting in this case.

## DISCUSSION

With this procedural backdrop and overview of the positions, the Court evaluates the factors to be considered under § 1404(a).

### A. Private Interest Factors

#### 1. The relative ease of access to sources of proof

There is no question that the parties will need to exchange large quantities of documents and other physical evidence currently located at Ford's place of business in Michigan. However, technological advancements have reduced some of the burdens associated with physical evidence. *Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F. Supp. 2d 725, 732 (S.D. Tex. 2006). In fact, Plaintiffs report that Ford has already produced approximately 36,500 documents electronically. And there is no evidence that additional document production cannot similarly be produced with ease through technology. Yet according to the Fifth Circuit, "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

The evidence and arguments regarding specific sources of proof and its mobility are sparse. Just as Ford may have CP4 pumps, engine models, and other design materials that are not scannable documents in Michigan, Plaintiffs may have a vehicle, non-party

sources related to the purchase and servicing of the vehicles, and damages evidence in Texas. And while Ford argues that discovery in product liability cases is heavily weighted with respect to liability issues as opposed to damages issues,[2] it is clear that the parties have agreed to conduct much of that discovery in Michigan, eliminating a large portion of the need for transport.

Ford argues that a large number of witnesses will be Ford employees located in Dearborn, Michigan—in the Eastern District of Michigan. It further suggests that while many witnesses are its employees, subject to its control, many may have likely already left Ford's employ, given that the design, manufacturing, and marketing dates of the model years at issue were long ago. It further speculates that current employees may leave Ford's employ for a number of reasons, such as retirement or new jobs.

There are two problems with these arguments. First, Plaintiffs have conducted three depositions to date of Ford corporate representatives, in Detroit, by video. And the parties' protective order expressly contemplates coordination of discovery across the related actions, including *Nunez*, *Farlow*, and *Droesser*, all of which are or will soon be pending in the Eastern District of Michigan. D.E. 41, p. 7; 69-3. Second, without evidence of specific witnesses, this Court does not have evidence of the parties' respective sources of proof. "The movant must specifically identify the key witnesses

---

[2] Ford cites *Brown v. Exactech, Inc.*, 4:17-CV-00698-O, 2017 WL 6756669, at *2 (N.D. Tex. Dec. 8, 2017), *report and recommendation adopted,* 4:17-CV-00698-O, 2017 WL 6729485 (N.D. Tex. Dec. 28, 2017). While the opinion states that the majority of discovery in that product liability case will be at the manufacturer's place of business and that the liability discovery will overshadow the damages discovery, it does not suggest that this is always the case in product liability cases and does not purport to recite a general rule.

and outline the substance of their testimony." *Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 170 (S.D. Tex. 1995). Ford has not carried its burden of proof on this matter.

The Court FINDS that the first private factor is neutral.

### 2. The availability of compulsory process to secure the attendance of witnesses

Ford suggests that a number of its employees will likely be witnesses. Current employees do not carry much weight in the transfer analysis because the employer controls them and will be able to compel their testimony at trial. *Cont'l Airlines*, 805 F. Supp. at 1397. Otherwise, Ford has failed to identify key non-party witnesses (while speculating as to both former employees and Bosch witnesses) and has not demonstrated that they are within the subpoena power of the Eastern District of Michigan. *Bevil, supra*. The fact that Bosch headquarters are located only 25 miles from Detroit, Michigan, also within the Eastern District of Michigan, does not aid the analysis when their identity and the subject matter of their testimony is unknown. *Bevil, supra*.

Ford also complains that the dealers who sold and serviced Plaintiffs' vehicles—even those located in Texas—are all outside of this Court's subpoena range. But this Court can enforce subpoenas throughout Texas. Fed. R. Civ. P. 45(c)(1)(B) (allowing district courts to subpoena witnesses for trial throughout the state where the court sits so long as doing so would not require the witness to incur substantial expense); *NFC Tech., LLC v. HTC Am.*, 2:13-CV-01058-JRG, 2014 WL 3834959, at *3 (E.D. Tex. Aug. 1, 2014). On the other hand, both Plaintiffs and Ford have identified a number of specific witnesses in Texas that they intend to call or who have been subpoenaed for discovery

and who are subject to this Court's subpoena power. Those Texas witnesses would not be subject to the subpoena power of the Eastern District of Michigan.

Neither party has identified any particular witnesses, other than named Plaintiffs, who would be testifying at trial. Without such identification, together with information as to where they reside, this Court cannot base a transfer decision on that argument. And even though non-party witnesses are entitled to greater deference than party witnesses, neither party has identified what non-party witnesses will be required for trial. *See generally*, *Neutron Depot, LLC v. Bankrate, Inc.*, 2:15-CV-101, 2016 WL 6246507, at *3 (S.D. Tex. Oct. 26, 2016).

The Court FINDS that the second private interest factor weighs slightly against transfer of this action.

### 3. The cost of attendance for willing witnesses

Ford argues that Detroit offers a much more convenient airport for those witnesses who have to travel. It claims that the number of witnesses, as yet unidentified, who are already in Michigan far outweigh the number in Texas. And it points out that the named Plaintiffs already indicated a willingness to travel to Michigan for purposes of this case in connection with the proposed MDL and any certification hearing that would have been held. Plaintiffs do not controvert these representations.

The Court FINDS that the third private interest factor weighs slightly in favor of granting transfer to the Eastern District of Michigan.

### 4. All other practical problems that make trial of a case easy, expeditious, and inexpensive.

Under this factor, Ford points to the fact that Plaintiffs' counsel filed the *Droesser* case in the Eastern District of Michigan making nearly identical claims on behalf of a putative nationwide class that, if certified, would subsume the putative Texas class. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).[3] Indeed, Ford points out that this judicial economy is precisely what Plaintiffs cite as a reason to certify a nationwide class in the *Droesser* case. And Plaintiffs' interest in an MDL and the parties' agreement to coordinate discovery indicate that referring the issues to a single judge offers untold efficiencies.

Yet the JPML disagreed. It looked at the claims and issues in each of these cases and held that the differences between individual claims show that these are not identical cases and the efficiencies of joint administration were somewhat illusory. Plaintiffs further respond that discovery and other pretrial proceedings, including briefing the Court on the class issues, have advanced significantly in this case and that the efficiency that this presents for these Plaintiffs will be lost if the case is transferred. *Oasis Research, LLC v. Go Daddy.com, Inc.*, 4:12-CV-528, 2012 WL 3600795, at *5 (E.D. Tex. Aug. 21, 2012).

---

[3] This case was superseded by statute on other grounds, as observed in *Ross v. Colorado Outward Bound School Inc.*, 822 F.2d 1524 (10th Cir. 1987), addressing transfers for lack of jurisdiction under 28 U.S.C. § 1631.

Ford did not file its motion to transfer until a week after Plaintiffs initiated their MDL request, which was four months after Ford filed its motion to dismiss. In addition to the pending work on the motion to dismiss, by the time the motion to transfer was filed, this Court had held four hearings addressing class certification and discovery issues. Any efficiency presented by this work will be lost in the event of transfer. *See generally, Salazar v. HTC Corp.*, 2:16-CV-01096, 2017 WL 8943155, at *6 (E.D. Tex. Oct. 19, 2017). While Ford points out that the parties have agreed to apply the products of discovery across the cases, thus equalizing the state of discovery across the board, Ford does not address the efficiencies of the Court's familiarity with the issues in the case that comes from briefing, hearings, and status conferences. There is no evidence that any such arguments have been heard by any other court.

Ford argues that some of the arguments Plaintiffs raise will be moot, based on changes they anticipate in Plaintiffs' case: the filing of an amended pleading and the dismissal of Plaintiff Stevens. However, the evidence to support those representations only includes email statements from Ford representatives, not Plaintiffs. D.E. 69-1, 69-4. Any such future change in this case that is within Plaintiffs' strategic purview is mere speculation and cannot support a decision on transfer at this time. And even if the motion to dismiss becomes moot, this Court has been exposed to some of the issues presented by the allegations and defenses, which familiarity is not lost simply because there is a change in procedure. Nothing suggests that the basic allegations regarding Ford's conduct with respect to the CP4 pump and theories for recovery will materially change with any amended pleading.

The Court FINDS that the fourth private interest factor is neutral.

### B. Public Interest Factors

#### 1. The administrative difficulties flowing from court congestion

Ford argues that the Eastern District of Michigan docket is lighter than that of the Southern District of Texas. D.E. 52-3. Plaintiffs argue that the same statistical profile shows that the Southern District of Texas has a faster file-to-disposition rate, which is a relevant consideration. *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 828 (S.D. Tex. 1993).

The Court FINDS that the first public interest factor is neutral.

#### 2. The local interest in having localized interests decided at home

Because this case involves a product sold nationwide, Ford interprets the location of the alleged harm as the Eastern District of Michigan where Ford engaged in the product design, manufacturing, and marketing of the allegedly defective product. For this proposition, Ford cites *All Voice Developments US, LLC v. Microsoft Corp.*, 6:09-CV-366, 2010 WL 11468302, at *4 (E.D. Tex. Apr. 8, 2010) and *Wingard v. Ford*, 5:14-CV-68, 2014 WL 12672183, at *5 (E.D. Tex. Dec. 18, 2014). These cases do not negate Plaintiffs' localized interests here.

*All Voice Developments* was a patent infringement case. "In patent cases, when a defendant sells products all over the country, no specific venue has a dominant interest in resolving the issue of patent infringement." 2010 WL 11468302, at *4. However, the opinion conceded that both parties continued to have an interest in having the dispute

resolved in their respective home states. So the *All Voice Development* court determined that the factor was neutral.

On this issue, the *All Voice Development* opinion cited *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008), which was also a patent infringement case. In *TS Tech*, however, the patent owner filed in a forum that had no relationship to the parties or the allegations, other than the fact that some of the products were sold there. The Federal Circuit, before deciding to transfer to the defendant's home district, expressly noted that no evidence or witnesses were located in the forum state and so the factor favored transfer.

The same was true in *Wingard*, which was also a patent infringement case. In *Wingard*, the issue was whether the case belonged in the Texarkana Division of the Eastern District of Texas or should be transferred to its Beaumont Division. Plaintiffs held no presence in either division of the Eastern District of Texas. With no localized interest favoring plaintiffs in either the transferor or transferee division, the court considered that factor to favor transfer to the Beaumont Division, where the defendant's headquarters were located.

Here, however, the allegations go beyond design and manufacture issues and involve marketing and other allegedly fraudulent representations in this state, manifestation of defects in this state, and service of the vehicles in this state, along with plaintiffs, evidence, and witnesses located here.[4] Plaintiffs also note that Texas

---

[4] Plaintiffs argue that the place of the alleged wrong is where the trucks were sold and the defects manifested, citing *Sun v. King Services, Inc.*, CIV.A. G-06-351, 2006 WL 2248473, at *3 (S.D. Tex. Aug. 3, 2006) (place of

consumers command a disproportionately high market share of pickup truck sales. D.E. 67, p. 2, n.4. As Plaintiffs argue, Texas citizens who sustained damages in Texas and seek to represent a Texas class have expressed a localized interest to offset the interest of Ford in having the case decided in the district of its headquarters.

The Court FINDS that the second public interest factor is neutral.

### 3. The familiarity of the forum with the law that will govern the case

The Court is confident that a court in the Eastern District of Michigan is competent to adjudicate this case, even to the extent that it involves Texas law. At the same time, because this Court sits in Texas, this Court is more familiar with Texas law relating to product liability, fraud, deceptive trade practices, unjust enrichment, and breach of warranty—the state law claims raised here. *See generally, Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 398 (S.D. Tex. 2011).

The Court FINDS that the third public factor weighs slightly against transfer of this action.

### 4. The avoidance of conflict of laws or applying foreign law

Ford argues that there are no known conflicts of laws and that this factor is neutral. Plaintiffs have not expressed a contrary position.

The Court FINDS that the fourth public interest factor is neutral.

---

alleged wrong was where collision occurred). However, *Sun* appears to be a negligence rather than product liability case and thus it contributes little to the analysis of the location of the alleged wrong here.

## CONCLUSION

For the reasons set out above, the court FINDS that the third private interest factor weighs slightly in favor of transfer. The second private interest factor and the third public interest factor weigh slightly against transfer. The remaining factors are neutral. Therefore, Ford has not sustained its burden to show good cause for transfer of this action. The Eastern District of Michigan is not clearly more convenient. The motion to transfer venue (D.E. 52) is DENIED.

ORDERED this 17th day of March, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE