**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

**ERIC STEVENS, et al.,**

Plaintiffs,

**v.**

**CIVIL ACTION NO.:  2:18-cv-00456**

**FORD MOTOR COMPANY,**

Defendant.

---

**FORD MOTOR COMPANY'S OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.  Plaintiffs fail to prove commonality because there is no viable common proof of a class-wide defect .......................................................................................................... 3

II.  Plaintiffs' proposed classes are not ascertainable because they require individualized inquiries into manifestation and causation ................................................. 4

III.  Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance requirement ................................. 6

    A.  Plaintiffs' evidence shows the vast majority of Class Vehicles will never manifest the alleged defect, barring recovery under Texas law............................. 7

    B.  Plaintiffs' fraud-based claims require individualized proof of reliance ................ 9

    C.  Plaintiffs cannot establish adequate pre-suit notice through common proof....... 11

    D.  Individual limitations issues also predominate .................................................... 12

    E.  Plaintiffs have no viable theories of classwide damages .................................... 14

        1.  Plaintiffs fail to proffer admissible damages models for either class ...... 15

        2.  Plaintiffs' benefit-of-the-bargain model is not reliable and does not fit their theory of liability for the "Overpayment Class........................... 17

        3.  Plaintiffs' cost-of-repair model does not fit their theory of liability for the "Failure Class ....................................................................... 20

IV.  The named Plaintiffs are inadequate class representatives ............................................ 22

    A.  Named Plaintiffs' interests conflict with those of absent class members ............ 22

    B.  Plaintiff Darren Fulton is an inadequate representative because he caused his manifestation through abuse and no longer owns his vehicle ....................... 24

    C.  Plaintiff Craig Broussard is an inadequate representative because he no longer owns his first vehicle, caused his manifestation through abuse, and did not pay to repair his fuel system ..................................................................... 25

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Air Bag Prods. Liab. Litig.*,
  7 F. Supp. 2d 792 (E.D. La. 1998) ........................................................................7

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ..............................................................................................22

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ....................................................................24, 25

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ....................................................................14, 17, 18

*Brooks v. Lincoln Nat'l Life Ins. Co.*,
  2008 U.S. Dist. LEXIS 121483 (E.D. Tex. Feb. 12, 2008) ..................................13

*Brown v. Electrolux Home Prods.*,
  817 F.3d 1225 (11th Cir. 2016) ..............................................................................9

*Brown v. Electrolux Home Prods.*,
  No. 1:08-cv-30 (S.D. Ga. Jan. 25, 2017) ................................................................9

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721 (7th Cir. 2011) ................................................................................23

*Cole v. GMC*,
  484 F.3d 717 (5th Cir. 2007) ................................................................................11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................14, 15, 16, 17, 21

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ..........................................................................21

*Corley v. Entergy Corp.*,
  220 F.R.D. 478 (S.D. Tex. 2004) ......................................................................7, 13

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) ....................................................................14, 20, 21

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..............................................................3, 15, 16, 20

*Doll v. Chi. Title Ins. Co.*,
   246 F.R.D. 683 (D. Kan. 2007)..................................................................22, 23, 25

*Doyle v. Chrysler Grp. LLC*,
   2014 WL 7690155 (Oct. 9, 2014), *rev'd on other grounds*, 663 F. App'x 576
   (9th Cir. 2016).......................................................................................................24

*Falcon v. Philips Elecs. N. Am. Corp.*,
   304 F. App'x 896 (2d Cir. 2008) ...........................................................................24

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
   2012 WL 379944 (D.N.J. Feb. 6, 2012) ...............................................................13

*In re Ford Paint Litig.*,
   182 F.R.D. 214 (E.D. La. 1998).............................................................................14

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008) ..........................................................................23

*Galitski v. Samsung Telecomms. Am., LLC*,
   2015 WL 5319802 (N.D. Tex. Sept. 11, 2015).......................................................9

*Gallier v. Woodbury Fin. Servs., Inc.*,
   2016 WL 4765059 (S.D. Tex. Sept. 13, 2016) .....................................................13

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)................................................................................................2

*Gene And Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) .............................................................................7, 12

*In re GM LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on other grounds*, 2017 WL
   3443623 (S.D.N.Y. Aug. 9, 2017) ..........................................................................7

*Hancock v. Chi. Title Ins. Co.*,
   263 F.R.D. 383 (N.D. Tex. 2009) ...........................................................................6

*Ibe v. Jones*,
   836 F.3d 516 (5th Cir. 2016) ...................................................................................9

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ...................................................................................5

*Kondash v. Kia Motors Am., Inc.*,
   2020 WL 5816228 (S.D. Ohio Sept. 30, 2020) ......................................................4

*In re Kosmos Energy Ltd. Sec. Litig.*,
   299 F.R.D. 133 (N.D. Tex. 2014) ......................................................................2, 10

*Kramer v. Toyota Motor Corp.*,
   668 F. App'x 765 (9th Cir. 2016) ...................................................................4

*MacDougall v. Am. Honda Motor Co.*,
   2020 WL 5583534 (C.D. Cal. Sept. 11, 2020) ...........................................17

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012).............................................................................7

*Martin v. Home Depot U.S.A.*,
   369 F. Supp. 2d 887 (W.D. Tex. 2005).......................................................11

*Mazur v. eBay*,
   257 F.R.D. 563 (N.D. Cal. 2009) ...................................................................19

*Mims v. Stewart Title Guar. Co.*,
   590 F.3d 298 (5th Cir. 2009) ........................................................................10

*Moore v. Comcast Corp.*,
   268 F.R.D. 530 (E.D. Pa. 2010)....................................................................23

*Morrow v. Washington*,
   277 F.R.D. 172 (E.D. Tex. Aug. 29, 2011)...................................................5

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
   964 F. Supp. 2d 805 (S.D. Tex. 2013) ........................................................11

*Oscar Priv. Equity Invs. v. Allegiance Telecom, Inc.*,
   487 F.3d 261 (5th Cir. 2007) ..........................................................................3

*Pfeffer v. HSA Retail, Inc.*,
   2012 WL 1910034 (W.D. Tex. May 24, 2012) .........................................5, 6

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
   100 F. App'x 296 (5th Cir. 2004) .................................................................21

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
   215 F.R.D. 523 (E.D. Tex. 2003)..................................................................13

*Pioneer Valley Casket Co. v. Serv. Corp. Int'l*,
   2008 WL 11395528 (S.D. Tex. Nov. 24, 2008) .........................................17

*Porcell v. Lincoln Wood Prods.*,
   713 F. Supp. 2d 1305 (D.N.M. 2010) .........................................................12

*Prantil v. Arkema Inc.*,
   986 F.3d 570 (5th Cir. 2021) .................................................1, 3, 4, 15, 20

*In re Processed Egg Prods. Antitrust Litig.*,
 312 F.R.D. 124 (E.D. Pa. 2015)............................................................................17

*Reed v. Advocate Health Care*,
 268 F.R.D. 573 (N.D. Ill. 2009)............................................................................18

*Rosa v. Am. Water Heater Co.*,
 177 F. Supp. 3d 1025 (S.D. Tex. 2016) ..............................................................7, 8

*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*,
 319 F.3d 205 (5th Cir. 2003) .................................................................................9

*Schechner v. Whirlpool Corp.*,
 2019 WL 4891192 (E.D. Mich. Aug. 13, 2019) ...........................................16, 17

*Seeligson v. Devon Energy Prod. Co. L.P.*,
 761 F. App'x 329 (5th Cir. 2019) .........................................................................12

*Simms v. Jones*,
 296 F.R.D. 485 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516
 (5th Cir. 2016)......................................................................................................10

*Smith v. Palafox*,
 728 F. App'x 270 (5th Cir. 2018) (per curiam) ...................................................13

*Std. Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013)..............................................................................................18

*Teta v. Chow*,
 712 F.3d 886 (5th Cir. 2013) .................................................................................3

*Thompson v. Deutsche Bank Nat. Tr. Co.*,
 775 F.3d 298 (5th Cir. 2014) ...............................................................................14

*Verde Mins., LLC v. Koerner*,
 2020 WL 3546244 (S.D. Tex. Apr. 1, 2020) (Ramos, J.)..................................2, 12

*Verde v. Stoneridge, Inc.*,
 2016 WL 9022449 (E.D. Tex. Nov. 7, 2016) .......................................................11

*Warren v. Reserve Fund, Inc.*,
 728 F.2d 741 (5th Cir. 1984) ...............................................................................22

*Windham v. Am. Brands, Inc.*,
 565 F.2d 59 (4th Cir. 1977) .................................................................................20

**State Cases**

*DaimlerChrysler Corp. v. Inman*,
  252 S.W.3d 299 (Tex. 2008)......................................................................7

*Ford Motor Co. v. Ocanas*,
  138 S.W.3d 447 (Tex. App.—Corpus Christi 2004, no pet.), *as amended on
  denial of reh'g* (July 15, 2004) ...............................................................10

*GMC v. Garza*,
  179 S.W.3d 76 (Tex. App.—San Antonio 2005, no pet.)........................8, 9

*Henry Schein v. Stromboe*,
  102 S.W.3d 675 (Tex. 2002)....................................................................10

*Microsoft Corp. v. Manning*,
  914 S.W.2d 602 (Tex. App.—Texarkana 1995, writ dismissed)..................8

*Schlumberger Tech. Corp. v. Swanson*,
  959 S.W.2d 171 (Tex. 1997)......................................................................9

*Wagner & Brown, Ltd. v. Horwood*,
  58 S.W.3d 732 (Tex. 2001).......................................................................12

**State Statutes**

Tex. Bus. & Com. Code § 2.725(a) ...............................................................12

Tex. Bus. & Com. Code § 17.565...................................................................12

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) .................................................12

**Rules**

Federal Rules of Civil Procedure

  Rule 23(a)........................................................................1, 2, 3, 8, 21, 22

  Rule 23(b) ...............................................................................3, 6, 14

Federal Rules of Evidence

  Rule 702 ...........................................................................................15

## INTRODUCTION

After 26 months of discovery, ten depositions, and over 365,000 pages of documents produced, Plaintiffs have had ample time to develop what should be the cornerstone of this putative class action: common proof that the CP4.2 high pressure fuel pump that nonparty Bosch made for Ford's 6.7L Power Stroke diesel engine is defective. Yet after all this time, Plaintiffs have marshalled *zero* admissible evidence of their theory that the fuel pump has a "fragile" design and prematurely fails because U.S. commercial diesel fuel lacks sufficient lubricity. To the contrary, Plaintiffs' only "evidence" that Ford vehicles contain a uniform defect is the unreliable and thus inadmissible expert opinion of Dr. Bradley Edgar. Dr. Edgar retreated from his ill-supported conclusions at his deposition and conceded that despite grounding his defect opinion in the absence of pump testing, he ignored the abundant testing that validated the pump's performance. Plaintiffs' failure to proffer *Daubert*-approved common proof of the crux of this lawsuit under Rule 23(a) is fatal under recent Fifth Circuit precedent. *See Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021).

Plaintiffs cannot meet the other Rule 23 requirements either. *First*, Plaintiffs' so-called "Failure" class is not ascertainable. Plaintiffs must show that *every* CP4 fuel pump replaced in a Class Vehicle at customer expense failed "because of the alleged defect." But many fuel pumps replaced did not fail *at all*, and most fuel pump failures are unrelated to Plaintiffs' defect theory. Plaintiffs' expert admits that identifying class members and the cause of any given pump failure requires ascertainability-destroying individualized investigations of each vehicle.

*Second*, questions of law or fact that are common to the class as a whole do not predominate over individual questions. Texas law bars recovery for the vast majority of putative class members who did not experience a fuel pump failure. And at trial, each Plaintiff will have to prove actual reliance on Ford's alleged misrepresentations, adequate pre-suit notice to Ford, and the non-

applicability of the relevant statutes of limitations. The number and scope of these plaintiff-by-plaintiff inquiries will swamp any questions of fact or law common to the class. Nor have Plaintiffs presented a viable damages theory, so they have not met their burden of showing that class-wide adjudication is appropriate. Plaintiffs' damages experts rely on the same defective methods several courts have agreed are unreliable, and even if admissible, those unreliable damages models do not fit Plaintiffs' theory of liability.

*Third*, the named Plaintiffs are not adequate representatives of the putative class. Rule 23(a) prohibits certification when, as here, conflicts of interest separate the named Plaintiffs from the class they seek to represent. These named Plaintiffs both allege that they experienced fuel pump failures, unlike the vast majority of absent class members, and will be subject to unique defenses inapplicable to absent class members, such as causation issues related to their pump replacements. Named Plaintiffs are also inadequate because the undisputed evidence shows that their respective pump failures resulted from customer abuse, not any alleged defect. The named Plaintiffs' interests and strategic imperatives thus are misaligned with the class they purport to represent.

## **ARGUMENT**

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982). To invoke this exception, "[p]laintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23 bear the burden of affirmatively demonstrating the rule's factual elements supporting certification." *Verde Mins., LLC v. Koerner*, 2020 WL 3546244, at *1 (S.D. Tex. Apr. 1, 2020) (Ramos, J.). A court may not "accept[] the plaintiff's pleadings as 'true' for purposes of the certification analysis." *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 138 (N.D. Tex. 2014). Instead, "[e]videntiary proof is required on disputed issues as there are no presumptions in favor of class certification." *Verde Mins.*, 2020 WL 3546244, at *1.

Rule 23 "requires the court to 'find,' not merely assume, the facts favoring class certification." *Oscar Priv. Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 267 (5th Cir. 2007). This obligation "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id.* at 268. A plaintiff's "request for class certification must fail if any one of Rule 23's requirements is not met." *Teta v. Chow*, 712 F.3d 886, 894 (5th Cir. 2013).

## I. Plaintiffs fail to prove commonality because there is no viable common proof of a class-wide defect.

Rule 23(a) requires Plaintiffs to show questions of law or fact common to all class members. Here, Plaintiffs seek to show commonality through the existence of a classwide common defect in the CP4 fuel pump. Pltfs' Motion for Class Certification ("Mot. Class Cert.) 4-6. To that end, Plaintiffs depend on Dr. Bradley Edgar. *See id.* at 4-10; *see also generally* Edgar Rpt. (Sealed Ex. 1 to Mot Class Cert.). But "[e]xpert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact,' nor can it establish 'through evidentiary proof' that Rule 23(b) is satisfied." *Prantil*, 986 F.3d at 575. Dr. Edgar's analysis does not survive that *Daubert* review.

As discussed more fully in Ford's Motion to Exclude Dr. Edgar's report and testimony, Dr. Edgar's unreliable opinions cannot support Plaintiffs' classwide defect claim because he admittedly misreads source material, ignores relevant data, and fails to test his hypothesis. It is undisputed that the fuel pump at issue underwent thorough durability testing by both Bosch and Ford establishing the robustness of the pump to even extremely low lubricity fuel such as jet fuel and kerosene. *See* Deposition of Corporate Representative Brien Fulton 239-53, **Ex. 1**. Dr. Edgar simply ignored that testing. Deposition of Bradley Edgar 53-54, **Ex. 2**. He contends that the CP4 fuel pump "is defectively designed and inadequate for real-world U.S. diesel fuel." Edgar Rpt. at

6. "Real-world U.S. diesel fuel," however, overwhelmingly complies with industry standards that Ford's and Bosch's testing exceeded. Expert Report of Roger Gault, **Ex. 3**; Expert Report of Lee Swanger, **Ex. 4**; Expert Report of Robert Kuhn, **Ex. 5**; Declaration of Randy Nussio, **Ex. 6**.

Dr. Edgar's claim of defect primarily rests on his counting of replacement Ford CP4 pumps sold by Bosch, which he expressly assumes were *all* used to replace pumps that failed due to his theorized defect. Yet he acknowledged in his deposition he has no basis to make this assumption, and dealership repair records teem with examples of external fuel contamination, such as diesel exhaust fluid, gasoline, or excessive amounts of water that cause the vast majority of non-warranty fuel pump replacements. Expert Report of Peter Lillo 23-35, **Ex. 7**. Dr. Edgar acknowledged these alternate causes of fuel pump replacements, but did not consider them in his analysis. Edgar Dep. 104-5.

Dr. Edgar's opinions thus "would not be admissible at trial," and so "should not pave the way for certifying a proposed class." *Prantil*, 986 F.3d at 576. And without Dr. Edgar's opinions, Plaintiffs have "little — if any — evidence of class-wide common defect." *Kondash v. Kia Motors Am., Inc.*, 2020 WL 5816228, at *11 (S.D. Ohio Sept. 30, 2020) (excluding expert and denying certification). That lack of admissible evidence of a common defect is sufficient to deny certification. *See Kramer v. Toyota Motor Corp.*, 668 F. App'x 765, 766 (9th Cir. 2016) ("Without any evidence of a common defect, there are no common questions of law or fact binding the proposed class together.").

## II.   **Plaintiffs' proposed classes are not ascertainable because they require individualized inquiries into manifestation and causation.**

Plaintiffs propose mutually exclusive "Failure" and "Overpayment" classes, so "[c]lass members who are not part of the Failure Class are by default part of the Overpayment Class." Mot. Class Cert. 12-13. Plaintiffs' "Failure Class" consists of Texas Class Vehicle purchasers "who (i)

experienced a catastrophic failure of their engine because of the defective CP4 fuel pump, and (ii) incurred out-of-pocket costs to pay for the repair of their Class Vehicle." *Id.* at 3. Ascertaining the membership of this class will require highly individualized inquiries into whether the individual experienced "a catastrophic failure of their engine," and whether that engine failure was "because of the defective CP4 fuel pump." Because membership in the Overpayment Class depends on excluding an individual from membership in the failure class, it suffers the same fatal flaw preventing certification.

The lack of "an ascertainable class of persons to be represented by the proposed class representative," which "is an implied prerequisite" of Rule 23, bars certification here. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Courts in this Circuit hold that "[t]he proposed class must be clearly defined so that it is administratively feasible for the Court to determine whether a particular individual is a member," *Morrow v. Washington*, 277 F.R.D. 172, 187 (E.D. Tex. Aug. 29, 2011), "without resorting to intensive, individualized factual inquiries." *Pfeffer v. HSA Retail, Inc.*, 2012 WL 1910034, *3 (W.D. Tex. May 24, 2012). Plaintiffs offer no administratively feasible method, or any approach free from intensive individualized inquires, for identifying proposed class members.

Plaintiffs offer no workable solution to identifying every vehicle purchaser who experienced a fuel pump failure "because of" the purported defect. First, Dr. Edgar admits that there are multiple non-defect related reasons for fuel pump failures and that determining the root cause of any given failure requires inspecting the vehicle:

> Q. In order to determine whether the cause of a particular pump failure is caused by customer abuse versus the design of the pump -- in normal operation, would you agree that, at the very least, **that would require an inspection of the vehicle at issue?**
>
> A. **It would. And it's very difficult to make those determinations.**

Edgar Dep. 108-09 (emphasis added).[1]  Second, subpoenaing *every Ford dealer in Texas* for *all* non-warranty fuel pump repairs *since 2010* will not identify putative Failure class members, Mot. Class Cert. 12, because many customers take their vehicles to independent repair shops. *See* FORD_DIESEL_A_00014250_CONFIDENTIAL (showing roughly ██ CP4 fuel pumps at Ford dealers were sold over the counter as "wholesale" parts — not installed at the dealership), **Ex. 8**. Customer and independent repair shop record keeping, even if it could be collected, will also vary. *See* STEVENS_000001 (documentation for former named Plaintiff's fuel pump repair omitting any mention of cause), **Ex. 9**. Third, Bosch's data shows, and Dr. Edgar does not dispute, that dealership technicians often misdiagnose fuel pumps as failed and thus replace functioning pumps. BOSCHLLC_FORD_00003553, at -3554 (showing TNI ("Trouble Not Indicated," i.e., a functioning fuel pump) ████████████████ of replacement among fuel pumps Bosch examined from customer vehicles), **Ex. 10**; Edgar Dep. 77. In other words, not all replacements occur because of fuel pump failures, let alone failures caused by the alleged defect. Lillo Rpt. 23-35. Inspecting each individual vehicle of potential class members and reviewing ownership, maintenance, and repair records entails the "intensive, individualized factual inquiries" that defeat ascertainability. *Pfeffer*, 2012 WL 1910034, *3.

### III.   Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance requirement.

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Plaintiffs must show that "class-wide proof [is] available to decide the predominant question[s]," *Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 389 (N.D. Tex. 2009) (alteration omitted). If "only mini-trials can determine

---

[1] Dr. Edgar agreed that "customer abuse" meant the "level of customer neglect or mistreatment of the vehicle that rises above the level at which Ford or Bosch or any other manufacturer can reasonably be expected to design the pump against." Edgar Dep. 74-75.

[predominant] issue[s]," then "[t]his prevents the purported class from having the required cohesiveness and defeats the predominance requirement." *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008).

Several elements of Plaintiffs' claims and Ford's defenses will require individualized proof, all of which "the court must painstakingly examine" in determining whether common issues predominate. *Corley v. Entergy Corp.*, 220 F.R.D. 478, 485 (S.D. Tex. 2004). As discussed below, these issues include (a) Texas's manifestation requirement, (b) each Plaintiff's actual reliance on Ford's alleged misrepresentations, (c) the adequacy of each class member's pre-suit notice, (d) the applicability of several statutes of limitations, and (e) damages. "Other federal courts have . . . recognized that suits alleging defects involving motor vehicles often involve complicated issues of individual causation that predominate over common questions regarding the existence of a defect." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012). So too here.

### A. Plaintiffs' evidence shows the vast majority of Class Vehicles will never manifest the alleged defect, barring recovery under Texas law.

Most of Plaintiffs' causes of action require individualized proof that each class member's vehicle (1) manifested a "catastrophic failure" (2) as a result of the alleged defect.[2] These necessary individualized inquiries will defeat predominance.

There is an "extensive body of case law indicating that Texas law does not permit plaintiffs to recover unless they have experienced some injury to a product with a limited usable life." *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1053 (S.D. Tex. 2016); *see also In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 451 (S.D.N.Y. 2017) ("[T]he great weight of Texas

---

[2] Proof of individual manifestation is a prerequisite to recovery under the DTPA, the implied warranty of merchantability, and for unjust enrichment. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) (DTPA and implied warranty); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (unjust enrichment). Arguably, proof of manifestation is not required to establish a claim for fraud by omission/misrepresentation. That said, as discussed below, such fraud claims still require individual proof of reliance.

authority suggests that manifestation is necessary . . . to bring an action for solely economic losses."), *modified on other grounds*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). The manifestation requirement recognizes that, for products "like tires or cars," "[a]t the end of the product's life, the product and whatever defect it may have had pass away." *Rosa*, 177 F. Supp. 3d at 1051 (quoting *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. App.—Texarkana 1995, writ dismissed)). "If," therefore, "a defect does not manifest itself in that time span, the buyer has gotten what he bargained for." *Id.* And Dr. Edgar confirmed the vast majority of potential class members—the owners of *at least* 92% of Class Vehicles—got what they bargained for because their vehicles have not had a fuel pump replacement. Edgar Dep. 87:13-22.

Moreover, even if there were a defect common to all class vehicles, individual issues of manifestation and causation would bar certification here. As a practical matter, Texas' manifestation requirement dictates that each class member provide individual proof of manifestation. *See GMC v. Garza*, 179 S.W.3d 76, 82 (Tex. App.—San Antonio 2005, no pet.). In *Garza*, plaintiffs claimed benefit-of-the-bargain damages from an alleged brake defect in certain Chevy Malibus. *Id.* at 79. The trial court certified a class of all Texas residents who bought such Malibus at retail, but the appellate court reversed the certification ruling. *Id.* at 84. The Court of Appeals recognized that, under Texas law, "purchasers who never experienced a problem during the time they owned the car . . . got what they paid for." *Id.* at 83. At trial, therefore, "individual questioning would be necessary to determine whether these owners actually experienced [the alleged defect]." *Id.* at 82. And even for owners who claimed to have experienced the defect, "credibility assessments would be required" to prove that this was, in fact, the case. *Id.* Even assuming, therefore, that there was a defect common to all class vehicles, "individual issues" on manifestation would "consume most of the parties' and the trial court's efforts." *Id.* at 84; *see also*

*Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1238 (11th Cir. 2016) (vacating class certification because "if . . . Texas law require[s] the defect to manifest, then *each* class member will need to prove that his washing machine actually grew mildew during the warranty period").[3]

This case presents nearly identical difficulties, as each class member will need to provide "individual proof" of manifestation. *Id*. And the jury will need to determine whether each of the ████████ of claimed malfunctions even involved a fuel pump failure, and if so whether the failure resulted from the alleged defect rather than misfueling, customer abuse, improper maintenance, or some other cause entirely. *See Garza*, 178 S.W.3d at 82 n.8. These Plaintiff-by-Plaintiff mini-trials would consume nearly all the trial court's efforts and overwhelm any issues common to the class. *See Ibe v. Jones*, 836 F.3d 516, 532 (5th Cir. 2016) (upholding denial of certification based on the need to evaluate the experience of individual class members); *Galitski v. Samsung Telecomms. Am., LLC*, 2015 WL 5319802, at *6 (N.D. Tex. Sept. 11, 2015) (denying certification because "there [was] no class-wide proof available to decide the question of breach and only mini-trials c[ould] determine this issue").

### B.  Plaintiffs' fraud-based claims require individualized proof of reliance.

The Fifth Circuit has consistently held that "cases that involve individual reliance fail the predominance test." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003). Several of Plaintiffs' claims require individualized proof of reliance, so class certification is inappropriate.

Count I alleges fraudulent concealment. SAC ¶¶ 191-211. Under Texas law, "[f]raud by non-disclosure is simply a subcategory of fraud," and, whether by non-disclosure or affirmative misrepresentation, requires proof of reliance. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d

---

[3] On remand, the district court affirmed that "Texas law in fact require[s] near-certain manifestation." *Brown v. Electrolux Home Prods.*, No. 1:08-cv-30 (S.D. Ga. Jan. 25, 2017) (Dkt. 224), slip op. at 6, **Ex. 11**.

171, 181 (Tex. 1997). Likewise, "reliance is an element of . . . DTPA 'laundry list' violations," which Plaintiffs allege in the SAC. *Henry Schein v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002); *see* SAC ¶ 217. For such claims, the DTPA "require[s] each class member to prove reliance as a prerequisite to recovery." *Ford Motor Co. v. Ocanas*, 138 S.W.3d 447, 453 (Tex. App.—Corpus Christi 2004, no pet.), *as amended on denial of reh'g*, (July 15, 2004).

When reliance is an element of a cause of action, it "must be determined on an individual basis." *Simms v. Jones*, 296 F.R.D. 485, 509 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016). In *Ocanas*, plaintiffs alleged that Ford violated the DTPA and the implied warranty of merchantability by representing that certain F-150s would come equipped with a larger radiator than the base model. 138 S.W.3d at 450. The Court of Appeals reversed class certification because "there was no uniform evidence "that purchasers *actually did* rely on [Ford's] statements." *Id.* at 453. As a result, "common issues of reliance" did not "predominate over individual issues." *Id.*

Plaintiffs' fraud-based and DTPA claims face that same need for proof that each putative class member "*actually did rely*" on Ford's alleged misrepresentations in deciding to purchase the class vehicles. *Id.* These Plaintiff-by-Plaintiff inquiries will swamp any common questions applicable to the class. *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 303 (5th Cir. 2009) ("prov[ing] individual reliance" necessarily "preclud[es] class certification").[4]

---

[4] *In re Great S. Life Ins. Co. Sales Practices Litig.*, does not show Plaintiffs can prove classwide reliance, as the court there relied strictly on allegations in the complaint "which the Court accept[ed] as valid for the purposes of th[at class certification] motion." 192 F.R.D. 212, 216 (N.D. Tex. 2000). That approach is no longer good law. *See Kosmos Energy*, 299 F.R.D. at 138 (A court may not "accept[] the plaintiff's pleadings as 'true' for purposes of the certification analysis.").

### C.  Plaintiffs cannot establish adequate pre-suit notice through common proof.

Plaintiffs' warranty and DTPA claims also require individualized inquiries into whether each class member gave adequate pre-suit notice to Ford. *See Martin v. Home Depot U.S.A.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005) ("Pre-suit notice is . . . a condition precedent to actions based on breach of implied warranty."); *Verde v. Stoneridge, Inc.*, 2016 WL 9022449, at *11 (E.D. Tex. Nov. 7, 2016) ("The DTPA bars claims unless the statutory notice requirements have been met.").

Plaintiffs' gauzy assertion that "Ford was provided notice" does not satisfy the statutory notice requirement. SAC ¶ 245.  A claim for breach of an implied warranty requires proof that "*the plaintiff* notified the defendant of the breach within a reasonable time after the buyer discovered or should have discovered any breach of warranty." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 817 (S.D. Tex. 2013) (emphasis added). Otherwise, a plaintiff is "barred of remedy." *Id.* The SAC alleges that "Ford was provided notice" of the alleged defect, but does not allege that *each class member* provided adequate notice. SAC ¶ 245. Nor does the SAC allege that whatever notice was provided was within a reasonable time after each class member discovered or should have discovered the alleged warranty breach. Instead, the SAC alleges that notice was generally provided by "complaints filed against" Ford, "internal investigations," and "letters and communications sent by Plaintiffs and other class members." *Id.*

Plaintiffs cannot meet their burden by asserting "Ford was provided notice." *Id.* The purpose of pre-suit notice is not to inform the seller of the existence of an alleged defect, "but of *the buyer's* claim that [the defect] constitute[s] a breach," and that "the seller … must meet a claim for damages." *Cole v. GMC*, 484 F.3d 717, 727 (5th Cir. 2007) (emphasis added). To establish their warranty or DTPA claims, Plaintiffs must prove that *each* class member provided appropriate notice. This will "require an individualized inquiry for each class member to determine when the

alleged defect was discovered or should have been discovered and whether each class member exercised due diligence leading up to the discovery of the alleged breach." *Verde*, 2017 WL 2257172, at *1. And because these inquiries are "not susceptible to class-wide resolution," Plaintiffs "ha[ve] not met [their] burden to establish predominance." *Id.*; *see also Porcell v. Lincoln Wood Prods.*, 713 F. Supp. 2d 1305, 1316 (D.N.M. 2010) (denying certification because of the "need for individual determinations of when each proposed class member discovered or should have discovered the breach").

### D.  Individual limitations issues also predominate.

A district court's certification analysis must account for affirmative defenses. *See Seeligson v. Devon Energy Prod. Co. L.P.*, 761 F. App'x 329, 339 (5th Cir. 2019) (reversing class certification because the district court failed to address the individual issues raised by statutes of limitations). "[T]he predominance of individual issues necessary to decide an affirmative defense may preclude class certification." *Gene And Gene*, 541 F.3d at 327.

Many of the class claims are barred by their respective statutes of limitations. The original Complaint was filed on December 20, 2018, but the class claims extend as far back as 2010. SAC ¶ 181. None of the causes of action asserted in the Second Amended Complaint have a statute of limitations longer than four years.[5] Plaintiffs try to side-step these statutes of limitations by invoking the discovery rule and equitable tolling through allegations that class members did not discover and could not have reasonably discovered that their vehicles were defective "[u]ntil shortly before the filing of this Complaint." SAC ¶ 168.

---

[5] *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (fraud, 4 years); Tex. Bus. & Com. Code § 17.565 (DTPA, 2 years); Tex. Bus. & Com. Code § 2.725(a) (implied warranty, 4 years); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (unjust enrichment, 2 years).

The discovery rule and equitable tolling do not rescue Plaintiffs' flawed predominance argument. "[W]hether individual [plaintiffs'] claims are timely and whether equitable tolling applies to some or all of these claims are issues that are not amenable to class treatment." *Corley v. Entergy Corp.*, 220 F.R.D. 478, 488 (E.D. Tex. 2004). This is because the applicability of a statute of limitations will depend on what each individual plaintiff knew (or should have known), and when they knew it. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2012 WL 379944, at *36 (D.N.J. Feb. 6, 2012) ("Ford's statute-of-limitations defenses and any applicable discovery rule and/or other equitable tolling doctrine would require inquiries into the individual circumstances of each Plaintiff."). Named Plaintiff Craig Broussard alleges that he learned of a fuel pump failure due to "bad fuel" in October 2014, SAC ¶ 19, raising the question of what he knew about the alleged defect more than four years before suing over it. Mr. Broussard's experience highlights that the necessary limitations inquiries will involve "individual determination[s] that would clearly predominate over issues common to the class." *Brooks v. Lincoln Nat'l Life Ins. Co.*, 2008 U.S. Dist. LEXIS 121483, at *98 (E.D. Tex. Feb. 12, 2008).

Plaintiffs also assert that the relevant statutes of limitations have been tolled by Ford's fraudulent concealment. That unsupported allegation does not alter the predominance of individual issues. Under Texas law, "fraudulent concealment tolls limitations *until* the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence." *Smith v. Palafox*, 728 F. App'x 270, 275 (5th Cir. 2018) (per curiam) (emphasis added). So "it is the Plaintiffs' burden to establish the elements of fraudulent concealment and that inquiry will necessarily require more than common proof." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 532 (E.D. Tex. 2003). How fraudulent concealment tolls a statute of limitations is "heavily dependent on the facts of each case." *Gallier v. Woodbury Fin. Servs., Inc.*, 2016 WL 4765059, at

13

*2 (S.D. Tex. Sept. 13, 2016). Thus, Plaintiffs' assertion of fraudulent concealment guarantees the need for individual determinations, barring class adjudication.

The vast majority of the putative classes—i.e., Plaintiffs who bought a Class Vehicle between 2010 and December 20, 2016—would need to prove their own due diligence and lack of knowledge to survive some, if not all, of the statutes of limitations applicable to their claims. *See Thompson v. Deutsche Bank Nat. Tr. Co.*, 775 F.3d 298, 307 (5th Cir. 2014). The resulting mini-trials addressing each class member's tolling arguments would swamp any common issues. *See In re Ford Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998) ("If the various plaintiffs are in different positions with respect to their actual or constructive knowledge of potential paint peel problems, a classwide finding on this issue . . . would be improper.").

### E.  Plaintiffs have no viable theories of classwide damages.

Plaintiffs' inability to tender a valid theory of classwide damages also dooms their demand for certification. "[P]laintiffs seeking class certification . . . must . . . present a damages model 'establishing that damages are capable of measurement on a classwide basis.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Under *Comcast*, a court must conduct a "rigorous analysis" into whether "plaintiff's damages case [is] consistent with its liability case." 569 U.S. at 35. Courts may not accept "any method of measurement . . . so long as it can be applied classwide, no matter how arbitrary the measurements may be," because doing so would "reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* at 36. The Fifth Circuit forbids certification "where the calculation of damages is not susceptible to a mathematical or formulaic calculation." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306–07 (5th Cir. 2003); *see also id.* at 307 ("[W]here the issue of damages does not lend itself to mechanical calculation, but requires separate mini-trials

of an overwhelmingly large number of individual claims, the need to calculate individual damages will defeat predominance.").

Plaintiffs' proposals for estimating damages conflict with their liability case under *Comcast*, as they have not put forth any method that isolates damages attributable to either class. *See Comcast*, 569 U.S. at 35 (where plaintiffs' damages model does not "measure only those damages attributable to" their theory of liability specifically, "it cannot possibly establish that damages are susceptible of measurement across the entire class").

Rather than devising a reliable approach that accounted for the wide ranges of prices that differently situated individuals paid for their new and used vehicles, Messrs. Gaskin and Weir cherry-picked a single "overpayment" percentage to apply across the board to *all* Class Vehicles. They leave the allocation of damages among members of the putative "Overpayment" class to an undescribed claims administration process.

Plaintiffs' cost-of-repair expert likewise fails *Comcast*'s requirements because he has not determined—and *cannot* determine, without relying on work Dr. Edgar has admittedly not performed—what repair matches Plaintiffs' theory of liability, or how he will calculate the cost of that repair.

### 1.  Plaintiffs fail to proffer admissible damages models for either class.

Plaintiffs' experts' methodologies are unreliable and inadmissible under Rule 702 and *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Fifth Circuit recently confirmed that "the *Daubert* hurdle must be cleared when [expert] evidence is relevant to the decision to certify." *Prantil*, 986 F.3d at 575. Like their technical expert, if Plaintiffs' damages experts' analysis "would not be admissible at trial, it should not pave the way for certifying a proposed class." *Prantil*, 986 F.3d at 576. *Prantil*'s requirement means that for all the reasons the Court

should exclude Messrs. Gaskin, Weir, and Stockton under *Daubert*, class certification should be barred too.

### i. Plaintiffs' experts measure only consumer willingness to pay, not market value.

Even if the Court does not exclude Mr. Gaskin's conjoint analysis as unreliable under *Daubert*, it "also fails the requirements of *Comcast*." *Schechner v. Whirlpool Corp.*, 2019 WL 4891192, at *8 (E.D. Mich. Aug. 13, 2019) (rejecting Mr. Weir's nearly identical analysis). Mr. Gaskin purports to measure a market *price* premium attributable to the alleged defect by calculating what buyers would have paid for class vehicles in a but-for world with the defect disclosed. "Prices are set by supply and demand," and to measure actual *prices* in the but-for world, rather than the amount buyers would be willing to pay, Mr. Gaskin "needed to account for both supply-side and demand-side factors," which he has not done. *Id.* at *7; Expert Report of Daniel McFadden ¶¶ 18-22, **Ex. 12**; Expert Report of Dominique Hanssens ¶¶ 18-19, 29-32, **Ex. 13**.

Mr. Gaskin claims he adequately accounted for supply-side factors because Mr. Weir told him so. Gaskin Rpt. 9. Mr. Weir in turn "understand[s] that Mr. Gaskin considered and accounted for supply-side factors." Weir Rpt. 7. But neither expert reliably accounted for supply-side factors. Instead, Mr. Weir "unconvincingly recited suppliers' statements about the competitive importance of prices and relied upon historical retail sales and market data as his supply-side considerations." *Schechner*, 2019 WL 4891192, at *7. Mr. Weir's assertion that holding the number of vehicles sold constant in the but-for world because it is "fixed as a matter of history," Weir Rpt. 8, runs into two fatal problems. First, Mr. Gaskin admitted his price premium percentage is agnostic to the number of vehicles sold, and "there's no place to put" vehicles sold in his analysis. Gaskin Dep. 45-47; 93, **Ex. 14**. In other words, Mr. Gaskin does not even use the historical sales data Mr. Weir says he does. Second, even if Mr. Gaskin had used historical sales numbers, "historical transactions

reflect only historical supply-side factors, not what the prevailing market conditions would have been absent the alleged wrongful conduct." *Schechner*, 2019 WL 4891192, at *7. Because Mr. Gaskin's conjoint analysis fails to reflect a market price premium, it fails to satisfy *Comcast*.

**2. Plaintiffs' benefit-of-the-bargain model is not reliable and does not fit their theory of liability for the "Overpayment Class."**

**i. Using a single overpayment percentage across the entire putative class is a flawed and unreliable approach.**

Messrs. Gaskin's and Weir's model attempts to capture the *average* overcharge attributable to each vehicle at the time and place of its first sale. Plaintiffs' attempt to mask individualized issues with averages fails because "where the injury alleged is measured in terms of an average . . . , it is the plaintiff who must demonstrate the reasonable similarity" of the values being averaged. *Bell Atl.*, 339 F.3d at 306. Plaintiffs do not even try to meet this burden. *See MacDougall v. Am. Honda Motor Co.*, 2020 WL 5583534, at *8 (C.D. Cal. Sept. 11, 2020) (explaining that the reliability of an average depends on the similarity of the averaged values, and where there is significant heterogeneity in the data an average "w[ill] not reflect reality"). And the undisputed evidence shows substantial price variability over time, across and within different models, and by type of purchase (new vs. used). Hanssens Rpt. ¶¶ 75-89; Expert Report of Justin McCrary ¶¶ 39-50, **Ex. 15**.

"[A] proposed class seek[ing] to calculate damages by use of an average . . . bear[s] the burden of demonstrating the similarity" of each class member's damages. *Pioneer Valley Casket Co. v. Serv. Corp. Int'l*, 2008 WL 11395528, at *13 (S.D. Tex. Nov. 24, 2008); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 159 (E.D. Pa. 2015) (Plaintiffs must establish that "averages and aggregations are not masking individualized issues that are likely to predominate should the class action move forward.").

Plaintiffs do not even try to meet their burden of "demonstrat[ing] the reasonable similarity" of damages incurred by individual class members. *Bell Atl.,* 339 F.3d at 306. Messrs. Gaskin and Weir provide no method for determining the amount (if any) that any particular class member overpaid for his or her vehicle. *See Reed v. Advocate Health Care*, 268 F.R.D. 573, 594 (N.D. Ill. 2009) (denying certification where expert "d[id] not explain in any detail how he would actually calculate damages for each member of the putative class"). They instead cherry-picked a single price premium for all putative Class Vehicles, from F-250s used as daily drivers all the way up to commercial F-750s used exclusively for hauling. Mr. Gaskin readily admitted the Class Vehicles sell for a broad range of prices, Gaskin Dep. 50-51, and that he calculated different price premia for each of the six different price levels in his survey—a tacit acknowledgment that differences in sales prices are important. *See* Gaskin Rpt. Ex. L 3-4 (showing twenty different price premia). But Mr. Gaskin ignored the substantial heterogeneity in his own analysis. When asked why, he admitted that he was "just trying to get a conservative number that I feel can be comfortably applied to all vehicles." Gaskin Dep. 65.[6]

As the evidence reflects, no single percentage can validly be applied to all vehicles. Hanssens Rpt. ¶¶ 75-89; McCrary Rpt. ¶¶ 39-50. Ford has sold a broad range of Class Vehicles, from F-250 pickup trucks for individual use[7] all the way up to F-750 commercial trucks sold as incomplete vehicles and customized for specialized use.[8] These different vehicles came with substantially different prices paid by customers with different needs, preferences, and negotiating interest and ability. Hanssens Rpt. ¶¶ 75-89; McCrary Rpt. ¶¶ 39-50.

---

[6] Named Plaintiffs' willingness to "throw away what could be a major component of the class's recovery" by cherry-picking a so-called conservative price premium to eliminate the heterogeneity created by very different price premia at different price points further demonstrates their inadequacy to represent the class under Rule 23(a)(4). *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013); *see also* Section IV.A *infra*.

[7] *See, e.g.*, SAC ¶ 14 (alleging named Plaintiff Darren Fulton bought an F-250 he used "as his daily driving vehicle.").

[8] *See* 2017 F-650/F-750 Super Duty Brochure, at 7 (describing vehicle features designed to facilitate various customized commercial vehicle configurations built by aftermarket upfitters), **Ex. 16**.

ii.    **Plaintiffs offer no way to measure damages for any particular purchaser in the Overpayment Class.**

As explained above, Messrs. Gaskin and Weir provide a damages model that purports to measure a price premium attributable to the defect, an analysis limited to the time and place of first sale. Plaintiffs' "Overpayment" class definition, however, includes any Texas buyer of a class vehicle who has not incurred out of pocket costs to repair "a catastrophic engine failure," which includes former owners who have sold their vehicles (like Mr. Broussard), or buyers of used vehicles. Mr. Gaskin did *not* estimate any premium for *used* trucks, evaluate whether such a premium would be uniform, or consider whether the premium for new vehicles would even pass to later purchasers. Gaskin Dep. 18. Instead, Mr. Gaskin said that calculating classwide damages for the class members would be handled through a future claims administration process. Gaskin Dep. 16-17. Plaintiffs have waived their opportunity to describe that claims administration process, and thus cannot show that their damages model can formulaically calculate each class member's damages.

Courts addressing similar failures to consider used product transactions have denied class certification for failing to satisfy predominance. *Mazur* v. *eBay*, 257 F.R.D. 563, 564-65 (N.D. Cal. 2009). In *Mazur*, the plaintiff alleged that eBay allowed third parties to submit fake bids. The court found that common issues did not predominate over individual ones in part because class members may have since resold the auctioned items, and that the "the resale value would affect a damages calculation for the purposes of the instance action," as it "would either help lessen [a plaintiff's] loss, or improve her profit margin," and thus "would require an individualized inquiry which precludes class certification." *Id.* at 571-72.

Named Plaintiff Craig Broussard—the only representative of the "Overpayment" class—highlights the significance of the failure to consider how, if at all, the premium passes to secondary

buyers. Mr. Broussard owned a 2011 F-250, which he traded in when buying his current vehicle, a 2015 F-250. SAC ¶¶19-20. That truck had a fuel system replacement under warranty, which Plaintiffs assert as the basis of Mr. Broussard's membership in the "Overpayment" class.[9] Because Mr. Broussard traded in the 2011 truck, he recovered at least some of the alleged overpayment in the trade-in credit applied to his new vehicle. Without a damages model that accounts for used vehicle sales and purchases, Plaintiffs lack a model to measure classwide damages. Given this serious problem, the court "should not certify the class merely on the assurance of counsel that some solution will be found." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977).

### 3. Plaintiffs' cost-of-repair model does not fit their theory of liability for the "Failure Class."

#### i. Mr. Stockton fails to provide a mathematical or formulaic calculation of class-wide damages

As explained in Ford's Motion to Exclude Mr. Stockton's report and testimony, incorporated fully herein, he provided no reliable method to calculate classwide damages for the "Failure" class. *See* Stockton *Daubert*. Mr. Stockton asks the Court to rely on his assurance that he will be able to gather sufficient data from enough sources (he cannot now say how much or how many), execute an as-yet-undesigned survey of Ford dealerships, and combine all of that data into an as-yet-undesigned damages formula. That speculation is not evidence, nor would it be "admissible at trial." *Prantil*, 986 F.3d at 576.

Mr. Stockton's "check's in the mail" approach fails for the same reasons as in *Cruson*. There, the Fifth Circuit vacated the grant of class certification where an expert failed to offer a formula for calculating certain damages related to variable annuities, and asserted he would provide "[t]he precise details of how the calculation of these additional damages will be

---

[9] Mr. Broussard's car insurance paid for a fuel system replacement in the 2015 truck caused by significant water contamination. *See* Liberty Mutual Insurance Claim File, at 1, 12 (showing contaminated fuel), **Ex. 17**.

performed" later. 954 F.3d at 258. The Fifth Circuit held that insufficient for class certification, finding it is not enough to provide merely a "preliminary overview of how [these] damages might be calculated." *Id.*; *see also Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004) (insufficient to "merely opine[]" that a valid damages formula "could be found"). Here, as in *Cruson*, it is not enough for Mr. Stockton to provide a "preliminary overview" of the sources of information he might try to use to establish the repair costs paid by each class member. Plaintiffs' reliance on an expert who merely identifies potential methods of calculating class-wide damages without "actually employ[ing] them . . . alone suffices to support a finding that plaintiffs have not shown that damages can be calculated on a classwide basis." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 577-78 (C.D. Cal. 2014).

> ## ii. Plaintiffs' theory of liability rejects the efficacy of the repair Mr. Stockton uses in his analysis.

Mr. Stockton's analysis fails *Comcast* for an independent reason: Plaintiffs' theory of liability is that the repair underlying Mr. Stockton's analysis *does not correct* the alleged defect. "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast*, 569 U.S. at 35 (quotation marks omitted). Plaintiffs allege that "CP4 pumps and corresponding fuel injection systems, even when replaced or "fixed," will continue to fail in the Class Vehicles." SAC ¶ 64. Thus, awarding the members of the "Failure" class damages based on the cost of repair would not make them whole, as their replacement CP4 pumps will also fail, according to Plaintiffs' own liability theory. Plaintiffs' damages model thus fails to compensate them based on their theory of liability, precluding class certification.

**IV.    The named Plaintiffs are inadequate class representatives.**

Rule 23(a)(4) requires named plaintiffs to "fairly and adequately protect the interests of the class." Among other considerations, the adequacy inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The named Plaintiffs here have potential conflicts of interest with absent class members because of the material factual differences between named Plaintiffs and the majority of absent class members. These differences make certification inappropriate.

**A.  Named Plaintiffs' interests conflict with those of absent class members.**

Rule 23(a)(4) requires a class representative to "fairly and adequately protect the interests of the class." "[T]he presence of [a] characteristic peculiar to the named plaintiff" may defeat adequacy. *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984). This principle recognizes "that representation of the class will suffer if the named plaintiff is preoccupied with a defense which is applicable only to himself." *Id.*

Each named Plaintiff alleges that his class vehicle experienced a manifestation of the alleged defect. SAC ¶¶ 14-25. By contrast, the vast majority of absent class members have *not* experienced a manifestation. At trial, therefore, the named Plaintiffs will each be subject to various unique defenses—including improper maintenance and misuse of their vehicles—unavailable against putative class members who have not experienced a defect.

For the majority of class members, the most pertinent question will be whether the class vehicles contain a defect that is substantially certain to manifest during the vehicle's useful life. For the named Plaintiffs, however, the consuming question will be what each Plaintiff might have done to cause their alleged manifestations. To prevail, the named Plaintiffs will have to prove that their own conduct did not contribute to the vehicle problems they experienced; these efforts are "likely to usurp a significant portion of the litigant[s'] time and energy." *Doll v. Chi. Title Ins. Co.*,

246 F.R.D. 683, 687 (D. Kan. 2007). That creates a serious risk that "the named plaintiff[s] will become distracted by the presence of a possible defense applicable only to [them] so that the representation of the rest of the class will suffer." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). Even worse, Ford's successful defense that *even a single named Plaintiff* caused his own fuel pump malfunction by misfueling or improper vehicle modifications, for example, would bind every other member of the class—even absent class members or other named Plaintiffs who may not be subject to the same defense.

The misalignment between named Plaintiffs and absent class members also creates the potential for such defenses to "change [their] incentives in prosecuting th[e] case." *Moore v. Comcast Corp.*, 268 F.R.D. 530, 536 (E.D. Pa. 2010). Here, as explained below, named Plaintiffs' own actions and excessive water contamination led to their fuel pump replacements. So named Plaintiffs will be barred from recovery unless they can prove that the alleged defect, rather than their own conduct or an unrelated cause, caused the problems they experienced. By contrast, the majority of absent class members—i.e., those whose vehicles have not manifested the alleged defect—might be willing to concede that the named Plaintiffs' conduct should bar recovery. Absent class members have no interest in refuting alternative causes that do not affect their claims.

"[G]iven the inherent differences in the claims of the class representatives from those of other class members," it is inevitable that class representatives "would rely on arguments that are adverse to the interests of other class members." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 401 (S.D.N.Y. 2008) (denying certification where differences in medical histories between the class representatives and absent class members would lead to "antagonistic" positions about the possibility of alternative causes of the subject medical condition). Worse still, if Ford is "successful in raising a unique defense" to the named Plaintiffs' claims, then "the entire class [will

be] bound by a defense which is ordinarily only applicable to the representative individually." *Doll*, 246 F.R.D. at 687. There is no reason why *all* class members would wager their claims on *each* named Plaintiffs' ability to prove that their own actions did not cause the engine problems they experienced. This divergence of interests renders named Plaintiffs inadequate representatives of the putative class.

### B. Plaintiff Darren Fulton is an inadequate representative because he caused his manifestation through abuse and no longer owns his vehicle.

Plaintiff Darren Fulton is an inadequate class representative for the independent reason that he no longer owns his vehicle. According to the SAC, Fulton experienced engine problems "on or about October 24, 2018" and took his vehicle to a Ford dealership for repairs. SAC ¶ 15. This was less than two months before the original Complaint was filed. ECF No. 1 at 77. What the SAC omits about Mr. Fulton's fuel pump replacement is its cause: Mr. Fulton repeatedly ignored vehicle alerts that his fuel was heavily contaminated with water, and instead drove until his fuel system malfunctioned. Fulton Dep. 180-84 (describing his "water in fuel" alert going off three times and continuing to drive his vehicle until his engine malfunctioned), **Ex. 18**.

Fulton alleges that his vehicle "was ultimately repossessed" and he never drove it again. SAC ¶ 16. Class representatives are likely inadequate if they no longer have the product they claim is defective. *See, e.g.*, *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 358 (N.D. Cal. 2018) (collecting cases). In such cases, the loss of critical evidence raises many plaintiff-specific issues that threaten to become a major "focus in the litigation." *Id.* Without his vehicle, Fulton will significantly hamper his ability to prove a design defect, and he will also have to "defend[] against a charge of spoliation of evidence." *Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008). At trial, Fulton will not only "be required to prove all elements of [his] claim[s], but unlike other class members, [he] would also be required to overcome any adverse inference a

jury might draw as a result of [his] sale of the vehicle." *Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155, at *3 (Oct. 9, 2014), *rev'd on other grounds*, 663 F. App'x 576 (9th Cir. 2016). Thus, "even in the absence of bad faith, the spoliation issue, which is unique to [Fulton], risks becoming a focus in the litigation" to the detriment of absent class members. *In re Arris*, 327 F.R.D. at 358. Thus, Fulton is not an adequate class representative. *Id.*

### C. Plaintiff Craig Broussard is an inadequate representative because he no longer owns his first vehicle, caused his manifestation through abuse, and did not pay to repair his fuel system.

Mr. Broussard has owned two Class Vehicles: a 2011 F-250 he traded in when buying his current vehicle, a 2015 F-250. The 2011 truck had a fuel pump replacement performed under warranty. For the same reasons discussed above as to Mr. Fulton, Mr. Broussard would be an inadequate class representative for the "Overpayment" class because he no longer owns the vehicle tied to his purported membership in that class.[10] Also like Mr. Fulton, Mr. Broussard's own actions in using a contaminated auxiliary fuel tank and water-contaminated fuel led to the fuel system replacement for Mr. Broussard's 2015 truck, the basis of his membership in the purported "Failure" class. Kuhn Rpt. 28-29; Lillo Rpt. 93-94. Because of Mr. Fulton's and Mr. Broussard's unique circumstances, the vast majority of absent putative class members who have experienced no issue related to the purported defect risk being "bound by a defense which is ordinarily only applicable to the representative individually." *Doll*, 246 F.R.D. at 687.

## CONCLUSION

For these reasons, Plaintiffs' motion for class certification should be denied.

---

[10] The need to calculate the offset in potential cost-of-repair damages for Mr. Broussard's 2015 truck from the premium he received for trading in his 2011 truck also undermines his ability to adequately represent the "Failure" class.

Respectfully submitted,

*/s/ Charles B. Hampton*
Charles B. Hampton, Attorney in Charge
Texas Bar No. 00793890
MCGUIREWOODS LLP
600 Travis St., Suite 7500
Houston, Texas 77002
(713) 353-6683 / (832) 214-9936 (Fax)
champton@mcguirewoods.com

Courtney C. Shytle (*pro hac vice*)
cshytle@mcguirewoods.com
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2110 / (704) 444-8710 (Fax)

Perry W. Miles, IV (*pro hac vice*)
pmiles@mcguirewoods.com
Brian D. Schmalzbach (*pro hac vice*)
bschmalzbach@mcguirewoods.com
W. Cole Geddy (*pro hac vice*)
cgeddy@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
(804) 775-1039 / (804) 698-2122 (Fax)

**Attorneys for Ford Motor Company**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2021, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to all counsel of record via electronic mail.

*/s/ Charles B. Hampton*